UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

SHETUCKET PLUMBING SUPPLY INC., :
ET AL.,                         :
                                :
     Plaintiffs,                :
                                :
v.                              :    CASE NO. 3:05-CV-424(RNC)
                                :
S.C.S. AGENCY, INC. and         :
ANTHONY CHARLES,                :
                                :
     Defendants.                :

                         RULING AND ORDER

     Plaintiffs Shetucket Plumbing Supply Inc. ("Shetucket"), Shetucket Plumbing Supply Co. of Westerly, Inc., and PJ&A LLC ("PJ&A") bring this action against S.C.S. Agency, Inc.("S.C.S."), an insurance broker, and Anthony Charles ("Charles"), the president of S.C.S, alleging that they have sustained uninsured losses for which the defendants should be held responsible.  The complaint pleads claims against both defendants for breach of contract, innocent and negligent misrepresentation, breach of fiduciary duty, negligence, and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, et seq.  The defendants have moved to dismiss all the claims, in whole or in part, except the negligence claim.  For the reasons stated below, the motion is denied.

I.   Background

     The complaint alleges the following facts, which are accepted as true for purposes of this ruling.  Shetucket is in

the business of selling heating and plumbing supplies.  It operates eighteen retail and storage facilities at various locations in Connecticut and Rhode Island.

From 1983 to 2003, the plaintiffs relied on the defendants for insurance-related services.  These included soliciting proposals from insurance companies, and selecting the ones that were most appropriate for the plaintiffs' needs.  Throughout that time, it was understood and agreed that the plaintiffs needed blanket coverage for all their buildings and business property on a replacement cost basis.

In the spring of 2003, defendant Charles, acting through defendant S.C.S., solicited a proposal from Utica National Insurance Company on behalf of the plaintiffs.  Charles represented to the plaintiffs that Utica would provide blanket coverage for all eighteen of the plaintiffs' facilities, including replacement cost coverage for buildings in an amount over $4,000,000, and replacement cost coverage for inventory and other contents in an amount over $5,000,000.  Relying on these representations, the plaintiffs accepted the proposal.

Utica then issued two policies to the plaintiffs for the period June 1, 2003 through June 1, 2004.  The first policy provided blanket coverage for the facilities in Connecticut, including replacement cost coverage for buildings in the amount of $4,270,000, and replacement cost coverage for contents in the

amount of $5,460,000.  The other policy provided coverage for the facilities in Rhode Island limited to $641,000 for buildings, and $750,000 for contents, based on actual value, not replacement cost.  The defendants held the two policies on the plaintiffs' behalf and failed to inform them that the Rhode Island policy did not provide the same blanket coverage as the Connecticut policy.

On February 4, 2004, a fire occurred at a facility in Westerly, Rhode Island, which Shetucket had leased from PJ&A.  As a result of the fire, Shetucket lost inventory and other contents worth more than $1,400,000.  In addition, a building owned by PJ&A sustained damage in an amount exceeding $561,000.

The plaintiffs promptly submitted claims to Utica seeking full coverage for the losses.  Utica declined to provide coverage beyond the limits set forth in the Rhode Island policy, leaving the plaintiffs with substantial uninsured losses.  This lawsuit followed.

II.  Discussion

To plead a claim in federal court, all one has to do is provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467

U.S. 69, 73 (1984)).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Id. at 512.

### Breach of Contract

Defendants contend that the breach of contract claim should be dismissed because it is merely duplicative of the negligence claim.  Under Connecticut law, an action against an insurance broker for failure to procure insurance may be based on negligence or breach of contract, see Ursini v. Goldman, 118 Conn. 554, 559-60 (1934), or both, see Rametta v. Stella, 214 Conn. 484, 485 (1990).  A breach of contract claim differs from a negligence claim in that it is based on an enforceable agreement to procure specified coverage.  See L.G. Defelice, Inc. v. Fireman's Ins. Co., 41 F. Supp. 2d 152, 163 (D. Conn. 1998).  The complaint in this action alleges, expressly or by fair implication, that the defendants specifically agreed to procure from Utica blanket coverage, on a replacement cost basis, for all the plaintiffs' facilities in Connecticut and Rhode Island, then failed to do so.  This is sufficient to state a claim for breach of contract under Connecticut law.[1]

---

[1] The defendants seem to suggest that any harm caused by their alleged failure to procure proper insurance coverage may be fully addressed through the plaintiffs' cause of action for negligence, rendering the plaintiffs' other theories of liability superfluous.  Negligence does appear to be the legal theory on

The defendants also move to dismiss the breach of contract claim against Charles individually on the ground that the complaint alleges that he acted solely in his capacity as president of S.C.S.  The complaint contains no such allegation, as the plaintiffs correctly note.  See Pls.' Mem. Opp'n Mot. To Dismiss at 22 n.10.  Moreover, the complaint appears to allege that Charles, speaking for himself as an individual, rather than as president of S.C.S., specifically promised the plaintiffs they could rely on him personally to obtain from Utica the insurance coverage he specified.  Assuming such a promise was made by Charles, he may be held personally liable for breach of his own contract.[2]

Innocent and Negligent Misrepresentation

The defendants move to dismiss the claims for innocent and negligent misrepresentation based on Federal Rule of Civil Procedure 9(b), which requires that averments of fraud or mistake be stated with particularity.  The Supreme Court has declined to

---

which cases of this type ultimately are tried and decided.  See Hallas v. Boehmke and Dobosz, Inc., 239 Conn. 658, 661 (1997); Todd v. Malafronte, 3 Conn. App. 16, 18 (1984)(same).  But that is not always so, see Rametta, 214 Conn. at 489; and, in any event, a party is free to plead multiple claims even if one would suffice.  See Fed. R. Civ. P. 8(e)(2).

[2] Whether the plaintiffs can actually prove that they had such a separate contract with Charles individually can be addressed on a motion for summary judgment.  See Tricon Int'l, Ltd. v. United Constr., Inc., Case No. X03CV980518862S, 2005 WL 1097103, at *16-20 (Conn. Super. Ct. Apr. 1, 2005).

5

extend Rule 9(b)'s heightened pleading requirement for averments of fraud or mistake to other contexts, see Swierkiewicz, 534 U.S. at 513, and the Second Circuit has refrained from adopting the view that Rule 9(b) applies to claims for negligent misrepresentation, as the plaintiffs correctly point out. See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 188 (2d Cir. 2004).  Even assuming, however, that the Rule does apply in this context, I agree with the plaintiffs that their claims are pleaded with adequate particularity.

To satisfy the particularity requirement of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation omitted). Each of these requirements is satisfied.  The complaint alleges that on May 21, 2003, defendant Charles, acting on behalf of defendant S.C.S., assured the plaintiffs that Utica would provide blanket coverage, based on replacement cost, for all the plaintiffs' buildings and business property.  The complaint further alleges that this was a misrepresentation because such coverage was not provided with regard to the facilities in Rhode Island.  Greater particularity is not required at this stage of the litigation.

### Breach of Fiduciary Duty

The defendants move to dismiss the breach of fiduciary duty claim as against Charles individually.  They do not contend that the relationship between an insurance broker and a customer imposes no fiduciary duty on the broker under Connecticut law.  They contend, rather, that the plaintiffs have not alleged that they placed special trust and confidence in Charles individually.  The plaintiffs respond that this is a misreading of the complaint.  Here again, I agree.  The complaint explicitly alleges that "the plaintiffs placed their confidence and trust in the defendants"; "the defendants owed the plaintiffs fiduciary duties"; and "[t]he defendants, Mr. Charles and S.C.S., breached their fiduciary duties to the plaintiffs."

### Connecticut Unfair Trade Practices Act

The defendants move to dismiss the CUTPA claim on the ground that a negligent misrepresentation does not violate the statute.  The plaintiffs respond that the defendants' alleged misrepresentation, although unintentional, violated a provision of the Connecticut Unfair Insurance Practices Act ("CUIPA"), which defines as an unfair and deceptive insurance act or practice "[m]aking, issuing or circulating, or causing to be made, issued or circulated, any . . . sales presentation . . . which . . . [m]isrepresents the benefits, advantages, conditions or terms of any insurance policy."  Conn. Gen. Stat. § 38a-

816(1)(a) (2004).  Research has disclosed no Connecticut appellate opinion analyzing the issue whether a negligent misrepresentation violates this provision of CUIPA, and, if so, whether such a violation is sufficient in itself to support a CUTPA claim, and Superior Court opinions reflect differing views. Compare Scalise v. Stephens, No. X01CV020179296S, 2003 WL 22481480,*3 (Conn. Super Ct. Oct. 21, 2003)(motion to strike CUTPA claim based on negligent violation of § 38a-816(1)(a) denied); Masonicare Corp. v. Marsh USA, No. CV030821900, 2004 WL 424170, at *4 (Conn. Super. Ct. Feb. 18, 2004)(same) and Healthright, Inc. v. Executive Risk Specialty Ins., No. CV000272486S, 2001 WL 838367,*1 (Conn. Super. Ct. June 28, 2001)(motion to strike CUTPA claims based on violation of § 38a-816(1)(a) denied because allegation that insurance agent misrepresented terms of policy sufficient) with Healthright, Inc. v. Executive Risk Specialty Ins. Co., No. CV000272486S, 2001 WL 84209,*2-3 and n.2 (Conn. Super. Ct. Jan. 12, 2001)(motion to strike CUTPA claim based on alleged violation of § 38a-816(1)(a) granted; allegation that insured bought policy based on agent's assurance that coverage would be provided insufficient).  The same is true of the related issue, not briefed by the parties here, whether an insurance broker's professional negligence is actionable under CUTPA.  Compare  Hotak v. Barth Ins. Agency, Inc., No. CV010075027S, 2003 WL 23149917, at *3 (Conn. Super. Ct.

Dec. 12, 2003) (professional negligence exception to CUTPA does not apply to insurance agents) with N&L Trucking, LLC v. M.H. Chodos Ins. Agency, No. CV054011430S, 2005 WL 2503718, at *1 (Conn. Super. Ct. Sept. 23, 2005) (professional negligence exception to CUTPA does apply to insurance agents); Silk, LLC v. Cowles & Connell, No. X04CV03103524S, 2004 WL 1245915,*3 (Conn. Super. Ct. May 25, 2004)(same); Precision Mech. Servs., Inc. v. T.J. Pfund Assocs., Inc., No. CV980416692S,* 10 n.11 (Conn. Super. Ct. Dec. 22, 2003)(same) and 1049 Asylum L.P. v. Kinney Pike, Ins., No. CV020816344, 2003 WL 21496543.*4 (Conn. Super. Ct. May 20, 2003)(same).  Given this state of the law, any prediction as to how the Connecticut Supreme Court would rule on these issues should await a motion for summary judgment, when the Court will have the benefit of a better developed record and more thorough briefing, especially since deferring a ruling should have no material impact on the scope of discovery.

III. Conclusion

　　　Accordingly, the motion to dismiss [doc. # 26] is hereby denied.

　　　So ordered.

　　　Dated at Hartford, Connecticut this 2nd day of March 2006.


　　　　　　　　　　　　　　_____\s_____
　　　　　　　　　　　　　　　　　　Robert N. Chatigny
　　　　　　　　　　　　　　　　United States District Judge