UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHETUCKET PLUMBING SUPPLY INC., ) <br> SHETUCKET PLUMBING SUPPLY CO. of ) <br> WESTERLY, INC., ) <br> and ) <br> PJ&A LLC. ) <br>   ) <br>     Plaintiffs, ) <br>   ) <br>   v. ) <br>   ) <br> S.C.S. AGENCY, INC. and ) <br> ANTHONY CHARLES ) <br>   ) <br>     Defendants ) <br> _____ ) <br> S.C.S. AGENCY, INC. ) <br>   ) <br>     Third Party Plaintiff ) <br>   ) <br>   v. ) <br>   ) <br> UTICA MUTUAL INSURANCE ) <br> COMPANY ) <br>   ) <br>     Third Party Defendant ) | Case No.: 3:05CV424(RNC) <br><br><br><br><br><br><br><br><br> MAY , 2007 |

## PLAINTIFFS' LOCAL RULE 56(a)(1) STATEMENT

Plaintiffs, Shetucket Plumbing Supply Inc., Shetucket Plumbing Supply Co. of Westerly, Inc., and PJ&A LLC, hereby submits their Local Rule 56(a)(1) statement of undisputed facts in support of their motion for partial summary judgment.

1. The plaintiff Shetucket Plumbing Supply, Inc. ("Shetucket") is a Connecticut corporation with business locations throughout Connecticut and in Rhode Island. Plaintiff Shetucket Plumbing Supply Co. of Westerly, Inc. is a Connecticut corporation,

affiliated with Shetucket Plumbing Supply, Inc. (both corporations collectively referred to as "Shetucket"). Affidavit of Joseph Fatone ("Fatone Aff."), ¶ 4.

2. The plaintiff PJ&A LLC ("PJ&A") is a Connecticut real estate and investment partnership affiliated with Shetucket, with a principal place of business in Norwich, Connecticut. Fatone Aff. ¶ 5.

3. At all relevant times, Shetucket was in the business of selling heating and plumbing supplies operating approximately eighteen retail and storage facilities at various locations in Connecticut and Rhode Island. At all relevant times, the facility in Westerly Rhode Island, consisting of one large main building and seven smaller buildings, was owned by the plaintiff PJ&A. Fatone Aff. ¶ 6.

4. The defendant S.C.S. AGENCY, INC. ("SCS") is a corporation with its principal place of business at 11 Grace Avenue, Great Neck, New York. At all relevant times, SCS transacted business in Connecticut. Complaint, ¶ 4 and Answer, ¶ 4 (Affidavit of William H. Clendenen, Jr., dated May 2, 2007 ["Clendenen Aff."], Ex. A, B).

5. The defendant ANTHONY CHARLES is a resident of the state of New York. At all relevant times, Anthony Charles was President of SCS and transacted business in Connecticut. Complaint, ¶ 5 and Answer, ¶ 5 (Clendenen Aff. Ex. A, B).

6. At all relevant times, the defendants, SCS and Anthony Charles, provided services to business entities and individuals wishing to obtain various types of insurance. Complaint, ¶ 6 and Answer, ¶ 6 (Clendenen Aff. Ex. A, B).

7. The defendant Anthony Charles is a principal of defendant SCS. Deposition of Anthony Charles ("Charles Dep.") at 328 (Affidavit of Darren E. Sinofsky, dated

November 27, 2006 ["Sinofsky Aff."], Ex. A).

8. In 1983, Anthony Charles and his former firm initiated a 23-year business relationship with plaintiffs in which Anthony Charles and his firms, including defendant SCS, agreed to select and procure appropriate insurance for the plaintiffs, and they in turn, agreed to purchase plaintiffs' insurance from him. Fatone Aff. ¶ 7; Defendants' Objections and Responses to Second Set of Requests for Admission of Facts, dated July 7, 2006 ("RFA Second Set"), ¶¶ 9-20 (Clendenen Aff. Ex. C); Charles Dep. at 15-16, 38-39, 326-28 (Clendenen Aff. Ex. D) (Sinofsky Aff. Ex. A).

9. SCS has been the insurance broker for plaintiffs Shetucket and PJ&A since approximately 1995, and Anthony Charles is the principal of SCS responsible for that account. Charles Dep. at 326-28 (Sinofsky Aff. Ex. A).

10. Since 1995, the plaintiffs have purchased essentially all of their commercial insurance policies through SCS. Fatone Aff. ¶ 8.

11. Since at least 1995, Anthony Charles and SCS, knew that the plaintiffs needed, and advised the plaintiffs to purchase blanket insurance for their Connecticut and Rhode Island business locations to protect their sizeable inventory, which the plaintiffs moved among various facilities. Charles Dep. at 38-42 (Clendenen Aff. Ex. D); Fatone Aff. ¶ 9.

12. From at least 1995 to 2003, Anthony Charles and SCS agreed to secure and secured policies for the plaintiffs that provided blanket coverage for Shetucket and PJ&A. Charles Dep. at 38-39, 326-30 (Clendenen Aff. Ex. D) (Sinofsky Aff. Ex. A); Fatone Aff. ¶ 10.

13. Faced with the fact that Shetucket's 2002-2003 property insurance contracts were expiring, SCS began preparing an insurance application (the "Application") for Shetucket on or about April 18, 2003.  Charles Dep. at 103-105 (Sinofsky Aff. Ex. A).

14. On April 23, 2003, SCS prepared the Application, seeking a property insurance policy that would provide blanket coverage for plaintiffs' Connecticut and Rhode Island locations and would value any losses at replacement cost.  Charles Dep. at 28-29 (Clendenen Aff. Ex. D).

15. The Application sought blanket property coverage for 20 locations Shetucket owned or operated in the states of Connecticut and Rhode Island.  Eighteen of these locations were in Connecticut; two, including the plaintiffs' Westerly facility, were in Rhode Island.  Charles Dep., Ex. 2 at 00256-00259 (Sinofsky Aff. Ex. C).

16. Barry Bass, an employee at SCS, had responsibility for preparing the Application and handling insurance company responses thereto.  Charles Dep. at 103-105 (Sinofsky Aff. Ex. A).

17. After completing the Application, SCS forwarded it to a number of insurers for their review.  On or about April 23, 2003, Anthony Charles personally delivered the Application to the Long Island, New York office of Utica National Insurance Group ("Utica Group"), a group of several affiliated insurance companies, which include Utica Mutual Insurance Company ("Utica Mutual") and Republic Franklin Insurance Co. ("Republic").  Charles Dep. at 105-106, 116-122 (Sinofsky Aff. Ex. A).

18. Denise Sog was the underwriter at Utica Group responsible for reviewing the Application and determining what kind of insurance to offer in response to it.  Deposition of William Albanese at pp. 23-24, 35 (Sinofsky Aff. Ex. D).

19. Accordingly, on or about May 21, 2003, Ms. Sog provided a written quote for a policy that would apply to the Connecticut properties only. This quote stated that the property insurance was "CT only" and that "Rhode Island property/gl [was] not included..." Charles Dep., Ex. 21; Deposition of Denise Sog ("Sog Dep.") at pp. 62-63 (Sinofsky Aff. Ex. E, F).

20. Thereafter, on or about May 22, 2003, Ms. Sog provided an oral quote to Mr. Bass of SCS for a policy that would apply to the Rhode Island Property. Sog Dep. Ex. 2 at pp. 290-91; Sog Dep. at 99-100 (Sinofsky Aff. Ex. E, G).

21. The premium for this Rhode Island policy was subsequently reduced, and on May 23, 2003, Anthony Charles wrote to Barry Bass that the "R.I. SMP premium [is] 15,000.00." Charles Dep., Ex. 20; Charles Dep. at 364 (Sinofsky Aff. Ex. A, H).

22. On or after May 23, 2003, Anthony Charles met with the plaintiffs' representatives and presented SCS's insurance proposal, dated May 21, 2003, representing that SCS would procure a property insurance policy that would provide blanket coverage for eighteen of plaintiffs' locations—sixteen in Connecticut and two in Rhode Island—and would value any losses at replacement cost. Charles Dep. at 33-40, 226-232; Charles Dep., Ex. 5, 22 (Clendenen Aff. Ex. D & E); (Sinofsky Aff. Ex. A, L); Fatone Aff. ¶ 11.

23. The blanket limits SCS recommended and listed in the insurance proposal dated May 21, 2003 were $4,661,000 for real property and $5,564,000 for contents. Charles Dep., Ex. 5, 22; Charles Dep. at 35-40, 66, 229 (Clendenen Aff. Ex. D, E); (Sinofsky Aff. Ex. A, L); Fatone Aff. ¶ 12.

24. Anthony Charles and SCS represented to plaintiffs that a Utica company would provide blanket coverage, in accordance with the insurance proposal dated May 21, 2003, for Shetucket's Connecticut and Rhode Island facilities, including the facility in Westerly, Rhode Island, owned by PJ&A. Fatone Aff. ¶ 13; Charles Dep. at 35-36 & Ex. 5, 6 (Clendenen Aff. Ex. D, E) (Sinofsky Aff. Ex. I).

25. Anthony Charles and SCS represented to plaintiffs that the coverage proposed in the May 21, 2003 proposal included agreed amount coverage with no deductible and RCV-replacement cost coverage. Charles Dep. at 39-40; RFA Second Set, ¶ 41 (Clendenen Aff. Ex. C, D).

26. In reliance on the advice of Anthony Charles and SCS, the plaintiffs accepted the proposal. The plaintiffs purchased and fully paid for the 2003-04 policies through SCS. Charles Dep. at 38-39, 328-330, 337-39, 345-46 (Clendenen Aff. Ex. D); Fatone Aff. ¶ 14.

27. When Mr. Charles presented the proposal dated May 21, 2003, Mr. Charles was aware that two different Utica Group companies would be issuing two separate insurance contracts. Charles Dep. at 160, 333-34; RFA Second Set, ¶ 48 (Sinofsky Aff. Ex. A) (Clendenen Aff. Ex. C, D)

28. The insurance proposal dated May 21, 2003 did not include or reference Ms. Sog's insurance quotes, or the conditions set forth in her written insurance quote. Charles Dep., Ex. 22 (Sinofsky Aff. Ex. L).

29. On or after May 23, 2003, Anthony Charles gave to Shetucket one insurance binder relating to property insurance, which stated that "Utica National Insurance Co."

would issue property insurance for real property, contents and EDP for "locations as per proposal." Charles Dep., Ex. 6; Charles Dep. at 231-32, 321-22, 333-34 (Sinofsky Aff. Ex. A, I) (Clendenen Aff. Ex. D).

30. The binder bound blanket coverage for plaintiffs' business locations in Connecticut and Rhode Island, including the facility in Westerly, Rhode Island, owned by PJ&A, valuing any losses at replacement cost. Charles Dep. at 43-44 (Clendenen Aff. Ex. D); Fatone Aff. ¶ 15.

31. Anthony Charles did not give Shetucket the reverse side of the insurance binder form. The reverse side of the insurance binder form states: "[T]his binder is cancelled when replaced by a policy." Charles Dep., Ex. 19A; Charles Dep. at 134; 175 (Sinofsky Aff. Ex. A, J).

32. It was SCS's policy and practice to give a customer such as Shetucket only the front side of the insurance binder. Deposition of Sue Hong at 26-29 (Clendenen Aff. Ex. F).

33. On or about May 27, 2003 SCS asked the underwriter to "please bind coverage per your quotes as follows:"

    Auto-CT-    $142,750

    Auto-RI-    $   3,012

    Package CT- $ 64,337

    Package RI- $ 15,500

Charles Dep., Ex. 23 (Sinofsky Aff. Ex. M).

34. On or about June 26, 2003, in accordance with Ms. Sog's quote for the Connecticut properties, SCS received a policy issued by Republic. This policy covered Shetucket's Connecticut properties and had blanket limits over those properties. This policy did not cover Shetucket's Rhode Island properties. Charles Dep., Ex. 7A; Deposition of Barry Bass ("Bass Dep."), at p. 63 (Sinofsky Aff. Ex. K, N).

35. On or about August 6, 2003, SCS received a policy issued by Utica Mutual. This policy provided property insurance coverage for Shetucket's two Rhode Island properties. It did not provide coverage for the Connecticut properties. The policy specified particular limits for the Rhode Island properties and indicated that those properties were not insured on a blanket basis with Shetucket's Connecticut properties. Charles Dep., Ex. 8 (Sinofsky Aff. Ex. O); Charles Dep. at 334-35 (Clendenen Aff. Ex. D); Bass Dep. at 63-66 (Sinofsky Aff. Ex. K).

36. Upon receipt, Barry Bass reviewed the Rhode Island policy issued by Utica Mutual. Upon receipt, he also reviewed the Connecticut policy issued by Republic. By the end of August 2003, Barry Bass had reviewed both policies. Charles Dep. at 184-87; Bass Dep. at 15, 31, 63-65 (Sinofsky Aff. Ex. A, K).

37. At no time between receiving the policies and February 4, 2004 did Mr. Bass, or anyone else at SCS, request that Utica Mutual amend the Rhode Island policy so that it would provide limits that were on a blanket basis with Shetucket's Connecticut properties. See Charles Dep. at 281-83, 336; Bass Dep. at 13, 19-21 (Sinofsky Aff. Ex. A, K) (Clendenen Aff. Ex. D, G).

38. Instead, Mr. Bass requested on August 11, 2003 that Utica Mutual change the Rhode Island policy to show "contents at location 1 of $750,000." Charles Dep., Ex. 9, 25. "Location 1" referred to the facility owned by PJ&A in Westerly, Rhode Island. See Charles Dep., Ex. 8, 25; Bass Dep. at 11-13, 15 (Sinofsky Aff. Ex. K, O) (Clendenen Aff. Ex. G, H). See also, RFA Second Set, ¶¶ 37-38 (Clendenen Aff. Ex. C).

39. Although Mr. Charles did not review the Rhode Island and Connecticut policies until February 2004, he learned in August 2003 that the Rhode Island policy showed specific limits of insurance and did not provide property insurance for the Rhode Island properties on a blanket basis with the Connecticut properties. Charles Dep. at. 56-59, 70-71, 335-36; RFA Second Set, ¶ 51 (Clendenen Aff. Ex. C, D).

40. There is no evidence that Mr. Charles or anyone else at SCS ever attempted, between the time SCS received the Utica Group policies and February 4, 2004, to procure alternative property insurance coverage for the plaintiffs' Rhode Island properties.

41. On February 4, 2004, a fire occurred at Shetucket's Westerly, Rhode Island location, which Shetucket leased from PJ&A. Third Party Complaint, ¶ 19 (Clendenen Aff. Ex. I).

42. On or about February 5, 2006, Anthony Charles personally reviewed the Rhode Island policy for the first time, and determined that it did not provide limits that were blanket over all of Shetucket's properties, but instead provided specific per

location limits for the Rhode Island properties. Charles Dep. at 68-69, 245-246 (Clendenen Aff. Ex. D) (Sinofsky Aff. Ex. A).

43. Unbeknownst to the plaintiffs, the Rhode Island policy limited coverage to specific and inadequate amounts of insurance for both buildings and inventory. Charles Dep. at 56-59, 85-87 (Clendenen Aff. Ex. D); Fatone Aff. ¶ 16.

44. Prior to the fire on February 4, 2004, neither Anthony Charles nor anyone else from SCS informed plaintiffs that the Rhode Island policy did not provide the coverage specified in the insurance application dated April 23, 2003. Charles Dep. at 57-60 (Clendenen Aff. Ex. D); Fatone Aff. ¶ 17.

45. Prior to the fire on February 4, 2004, neither Anthony Charles nor anyone else from SCS had informed plaintiffs that the Rhode Island policy did not provide the coverage SCS described in its proposal dated May 21, 2003 and had represented that it would procure for the plaintiffs. Charles Dep. 86-90 (Clendenen Aff. Ex. D); Fatone Aff. ¶ 17.

46. Prior to the fire on February 4, 2004, neither Anthony Charles nor anyone else from SCS informed plaintiffs that the Rhode Island policy did not provide the coverage specified and bound in the insurance binder issued by SCS on May 23, 2003. Charles Dep. at 86-90 (Clendenen Aff. Ex. D); Fatone Aff. ¶ 18.

47. As a result of the fire on February 4, 2004, Shetucket lost inventory and other contents worth more than $1,000,000. Fatone Aff. ¶ 19.

48. As a result of the fire, the building owned by PJ&A sustained damage exceeding $561,000. Fatone Aff. ¶ 20.

49. The plaintiffs promptly submitted claims to Utica seeking full coverage for the losses. Fatone Aff. ¶ 21.

50. Shortly thereafter, Anthony Charles and SCS requested that Utica Mutual change the Rhode Island policy so that it would include blanket limits. Charles Dep., Ex. 13; Charles Dep. at 268, 274 (Sinofsky Aff. Ex. A, Q).

51. The Utica Mutual personnel at the Long Island, New York office informed Anthony Charles that only the home office could make such a decision and encouraged Anthony Charles to write a letter requesting a change to the contract. Charles Dep. at 268, 272 (Sinofsky Aff. Ex. A).

52. On February 17, 2004, Anthony Charles sent a letter to Utica Mutual requesting Utica Mutual to provide coverage with limits different from those specified in the Rhode Island policy. Charles Dep., Ex. 13; Charles Dep. at 274 (Sinofsky Aff. Ex. A, Q).

53. In the letter, Anthony Charles contended that Barry Bass had made a "mistake of not alerting your underwriter [Ms. Sog] that the policy had not been issued as the application had requested." Charles Dep., Ex. 13 (Sinofsky Aff. Ex. Q).

54. Utica declined to provide coverage beyond the limits set forth in the Rhode Island policy, leaving plaintiffs with substantial losses. Fatone Aff. ¶ 22.

55. Had Anthony Charles and SCS obtained coverage for the Rhode Island location in accordance with the insurance application, insurance proposal, and insurance binder, plaintiffs' losses would have been fully covered. Charles Dep. at 314-15, 340-42 (Clendenen Aff. Ex. D).

56. When Anthony Charles learned in August 2003 that the Rhode Island policy did not provide blanket coverage and did not conform to the insurance proposal dated May 21, 2003 and the insurance binder dated May 23, 2000, he did not contact plaintiffs to tell them of the nonconformance. Charles Dep. at 57-59 (Clendenen Aff. Ex. D)

57. The defendants had an obligation to tell plaintiffs about the Rhode Island policy's nonconformance with the insurance proposal dated May 21, 2003 and the insurance binder dated May 23, 2003. Charles Dep. at 59-60 (Clendenen Aff. Ex. D).

58. The defendants did not fulfill their obligation to plaintiffs to tell plaintiffs about the Rhode Island policy's nonconformance with the insurance proposal dated May 21, 2003 and the insurance binder dated May 23, 2003. Charles Dep. at 61. (Clendenen Aff. Ex. D)

59. Once the defendants learned of the Rhode Island policy's nonconformance with the insurance proposal dated May 21, 2003 and the insurance binder dated May 23, 2003, it was defendants' responsibility to get Utica to change the policy. Charles Dep. at 70-71 (Clendenen Aff. Ex. D).

60. The defendants did not meet their responsibility to get Utica Mutual to change the Rhode Island policy so that it would conform to the May 21, 2003 insurance

proposal and the May 23, 2003 insurance binder. Charles Dep. at 70-71. See also, Charles Dep., Ex. 13, 28 (Clendenen Aff. Ex. D, J) (Sinofsky Aff. Ex. Q).

61. The defendants were responsible to make sure plaintiffs understood the Utica Group insurance policies. Charles Dep. at 85-86 (Clendenen Aff. Ex. D).

62. Until February 5, 2004, plaintiffs believed that they had blanket coverage for the Rhode Island facility owned by PJ&A. Charles Dep. at 85-86 (Clendenen Aff. Ex. D); Fatone Aff. ¶16.

         THE PLAINTIFFS


By: _____
   WILLIAM H. CLENDENEN, JR. (ct04261)
   Clendenen & Shea, LLC
   400 Orange Street
   New Haven, Connecticut  06502
   Tele: 203/787-1183
   Fax: 203/787-2847
   office@clenlaw.com
   whcj@clenlaw.com

CERTIFICATION:

This is to certify that a copy of the foregoing was mailed postage prepaid, to Joseph G. Fortner, Jr., Esq. and Brian D. Rich, Esq. Halloran & Sage LLP, One Goodwin Square, 225 Asylum Street, Hartford, Ct. 06103, Darren E. Sinofsky, Esq., Morrison Mahoney LLP, One Constitution Plaza, Hartford, Connecticut 06103, Lon A. Berk, Esq., Rhett E. Petcher, Esq., Hunton & Williams LLP, 1751 Pinnacle Dr. Suite 1700, McLean, VA 22102 on the 2d day of May, 2007.

_____
CLENDENEN & SHEA, LLC