UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHETUCKET PLUMBING SUPPLY INC., | ) | |
| SHETUCKET PLUMBING SUPPLY CO. of | ) | Case No.:  3:05CV424(RNC) |
| WESTERLY, INC., | ) | |
| and | ) | |
| PJ&A LLC. | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| S.C.S. AGENCY, INC. and | ) | |
| ANTHONY CHARLES | ) | MAY  2, 2007 |
| | ) | |
|     Defendants | ) | |
| _____ | ) | |
| S.C.S. AGENCY, INC. | ) | |
| | ) | |
|     Third Party Plaintiff | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| UTICA MUTUAL INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
|     Third Party Defendant | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In this diversity action,[1] the plaintiffs, Shetucket Plumbing Supply Inc., Shetucket

Plumbing Supply Co. of Westerly, Inc. (collectively, "Shetucket"), and PJ&A, LLC

_____

[1] Plaintiffs filed this action in the Connecticut Superior Court but defendants removed it
to this Court on March 9, 2005.

("PJ&A"), move for partial summary judgment against the defendant S.C.S. Agency, Inc. ("SCS") as to its liability on Counts One and Five of the complaint.  There is no genuine dispute that SCS, the plaintiffs' long-time insurance broker, breached its agreement to procure specified property insurance coverage for the plaintiffs (Count One).  Similarly, it is undisputed that SCS was negligent in failing both to obtain the coverage as promised and to notify the plaintiffs seasonally of its inability to obtain the coverage (Count Five).  Moreover, it is uncontested that, due to SCS's conduct, the plaintiffs were not fully insured on February 4, 2004 when a fire destroyed over $1,000,000.00 of Shetucket's inventory and caused severe damage to real property owned by PJ&A. The plaintiffs are accordingly entitled to judgment as a matter of law on their breach of contract and negligence claims against SCS.  They will prove the extent of their damages at a separate hearing on damages.

## SUMMARY OF UNDISPUTED FACTS

Plaintiff Shetucket sells heating and plumbing supplies and operates retail and storage facilities in Connecticut and Rhode Island.  Plaintiff PJ&A owns Shetucket's Rhode Island facility in Westerly, Rhode Island, which consists of one main building and seven smaller buildings.  Plaintiffs' Local Rule 56(a) (1) Statement ("Facts") at ¶¶ 1-3.

Defendant SCS has provided insurance advice and brokerage services to the plaintiffs since 1995.  Defendant Anthony Charles, SCS's president, and the principal responsible for the plaintiffs' accounts, initiated a long-term business relationship with the plaintiffs in 1983.  As part of that relationship, which has continued for more than two decades, Mr. Charles and his firms, including SCS, have selected and procured appropriate insurance for the plaintiffs, and the plaintiffs in turn have relied on Mr.

Charles's and his firms' expertise and advice.  Since 1995, the plaintiffs have purchased essentially all of their commercial insurance through SCS.  Facts at ¶ 10.

Since at least 1995, Mr. Charles and SCS knew that the plaintiffs needed property insurance that covered on a blanket basis[2] their Connecticut and Rhode Island business locations to protect the sizable inventory, which Shetucket moved among various facilities.  From at least 1995 through May 2003, SCS advised Shetucket to purchase, and procured for the plaintiffs, property insurance policies that provided the necessary blanket coverage.  Id., ¶¶11-12.

In April 2003, as Shetucket's 2002-03 property insurance contracts were expiring, SCS began preparing an insurance application (the "Application") to secure Shetucket's property insurance for 2003-04.  On April 23, 2003, SCS completed the Application, which sought replacement cost coverage in the amount of $ 4,661,000 for real property and $5,564,000 for contents on a blanket basis for Shetucket's Connecticut properties and Rhode Island properties.  Mr. Charles personally delivered the Application to the Long Island, New York office of Utica National Insurance Group ("Utica Group").  Utica Group is a group of several affiliated insurance companies, which includes the third party defendant, Utica Mutual Insurance Co. ("Utica Mutual"), and Republic Franklin Insurance Co. ("Republic").  Facts at ¶¶ 13-17.

On or after May 23, 2003, Mr. Charles, on behalf of SCS, met personally with the plaintiffs' representatives and presented an insurance proposal, dated May 21, 2003. During that presentation, Mr. Charles proposed that the plaintiffs purchase property insurance coverage of $4,661,000 for real property and $5,564,000 for contents on a

---

[2] Property insurance with blanket coverage means that the limits shown in the policy cover all of the locations listed in the policy.  See Charles Dep. at 28.

blanket basis over eighteen locations—sixteen in Connecticut and two in Rhode Island. Facts at ¶¶ 22-23. Mr. Charles represented that SCS would procure such a policy for the plaintiffs, and that Shetucket's facility in Westerly, Rhode Island, owned by PJ&A, would be among the properties covered on a blanket basis with the Connecticut properties. Mr. Charles further represented that the policy SCS procured would provide replacement cost coverage at an agreed amount, with no deductible. In reliance on the advice of Anthony Charles and SCS, the plaintiffs accepted SCS's proposal. Id., ¶¶ 22-26.

On May 23, 2003, Anthony Charles gave Shetucket one insurance binder relating to property insurance, which stated that "Utica National Insurance Co." would issue property insurance for real property, contents and EDP for "locations as per proposal." The binder bound blanket coverage for all of plaintiffs' business locations in Connecticut and Rhode Island listed in the May 21, 2003 proposal, valuing any losses at replacement cost. Id., ¶¶ 29-30.

On or about May 27, 2003, SCS asked Ms. Sog at Utica Group to "bind coverage per your quotes" on the insurance policies to be issued to Shetucket. Facts at ¶ 33. On or about June 26, 2003, SCS received a policy issued by Republic (the "Connecticut policy"). This policy covered Shetucket's Connecticut properties and had blanket limits over those properties, but did not cover Shetucket's Rhode Island properties. On or about August 6, 2003, SCS received a policy issued by Utica Mutual (the "Rhode Island policy"). The Rhode Island policy covered Shetucket's two Rhode Island properties, but not the Connecticut properties. The policy provided specific insurance limits for the Rhode Island properties, which were not on a blanket basis with the plaintiffs'

4

Connecticut properties.  Id., ¶¶ 34-35.

By the end of August 2003, Barry Bass had reviewed both the Connecticut and

Rhode Island policies.  At no time between receiving the policies and February 4, 2004

did Mr. Bass or anyone else at SCS request that Utica Mutual amend the Rhode Island

policy to provide limits that were on a blanket basis with Shetucket's Connecticut

properties.  Facts at ¶¶ 36-37.  Instead, on August 11, 2003, Mr. Bass asked Utica

Mutual to change the Rhode Island policy to reflect "contents at location 1 of $750,000."

"Location 1" referred to the Shetucket retail and storage facility in Westerly, owned by

PJ&A.  Id., ¶ 38.

Although Mr. Charles did not review the Connecticut and Rhode Island policies

until February 5, 2004, he learned in August 2003 that the Rhode Island policy did not

provide blanket coverage and did not conform to the May 21, 2003 insurance proposal

and the May 23, 2003 insurance binder.  He did not, however, contact plaintiffs to tell

them of the nonconformance.  Id., ¶¶ 39, 44-46, 56.

On February 4, 2004, a fire occurred at plaintiffs' Westerly Rhode Island facility.

As a result of the fire, the facility sustained substantial damage and Shetucket lost

inventory and other contents worth more than $1,000,000.  Id., ¶¶ 41, 47-48.  On

February 5, 2004, Anthony Charles personally reviewed the Rhode Island policy for the

first time and determined that it did not provide blanket coverage for all of Shetucket's

properties, but instead provided inadequate, limited insurance for both buildings and

contents at the Westerly facility.  Id., ¶ 42.

Before the fire on February 4, 2004, neither Mr. Charles nor anyone else from

SCS informed plaintiffs that the Rhode Island policy did not provide the coverage

specified in the insurance application dated April 23, 2003, in the SCS proposal dated May 21, 2003, and in the insurance binder issued by SCS on May 23, 2003. Id., ¶¶ 44-46.  Until February 5, 2004, plaintiffs believed that they had blanket coverage of $4,661,000 for real property and $5,564,000 for contents that could be applied to the Westerly Rhode Island location.   Id., ¶¶ 43, 62.

The plaintiffs promptly submitted claims to Utica Mutual seeking full coverage for the losses.  Shortly thereafter, Mr. Charles and SCS requested that Utica Mutual change the Rhode Island policy so that it would include blanket limits.  The Utica Mutual personnel at the Long Island, New York office encouraged Mr. Charles to write a letter to the home office requesting a change to the contract.  On February 17, 2004, Anthony Charles sent a letter requesting Utica Mutual to provide coverage with limits different from those specified in the Rhode Island policy.  In the letter, Anthony Charles contended that Barry Bass had made a "mistake of not alerting your underwriter that the policy had not been issued as the application had requested." Id., ¶¶ 49-53.

Utica Mutual declined to provide coverage beyond the limits set forth in the Rhode Island policy, leaving plaintiffs with substantial uninsured losses.  Had SCS obtained coverage for the Westerly Rhode Island location in accordance with the insurance application, insurance proposal, and insurance binder, plaintiffs' losses would have been fully covered. Id., ¶¶ 54-55.

## ARGUMENT

### I.  PLAINTIFFS HAVE SHOWN THE ABSENCE OF GENUINE ISSUES OF MATERIAL FACT AND ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNTS ONE AND FIVE OF THE COMPLAINT.

Under Rule 56, Fed. R. Civ. Pro., "judgment shall be rendered forthwith if the

6

pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  "A motion for summary judgment is designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried."  Weinstock v. Wilk,  296 F. Supp.2d 241,  245 (D. Conn. 2003).

As the parties seeking summary judgment, the plaintiffs must show—and have shown—the absence of genuine factual disputes.  Rosenberg v. Cavalry Investments, LLC, 2005 WL 2490353 (D. Conn. Sept 30, 2005) (Chatigny, J.) [3]  "To withstand a properly supported motion for summary judgment, the opposing party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Smith v. Rowland, 2007 WL 987481 (D. Conn. Mar. 31, 2007) (Chatigny, J.) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The defendants "must offer such proof as would allow a reasonable juror to return a verdict in [SCS's] favor...."  Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003) (citations omitted).

Here, the undisputed facts establish SCS's breach of contract and negligence as alleged in Counts One and Five of the complaint.  The defendants cannot present proof that would allow a reasonable juror to return a verdict in SCS's favor on those claims. This Court should therefore grant summary judgment against SCS on Counts One and Five the complaint and schedule a hearing in damages.

## II.  PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR BREACH OF CONTRACT CLAIM AGAINST SCS.

SCS's liability to the plaintiffs for breach of its agreement to procure specific

---

[3] All unreported cases are attached in alphabetical order.

insurance is beyond dispute.  Thus, summary judgment should enter for the plaintiffs on Count One of the complaint.

An action against an insurance agent for failing to obtain insurance may constitute a breach of contract, negligence, or both.  See, e.g., Rametta v. Stella, 214 Conn. 484, 489 (1990) (agent breached agreement to obtain fire insurance for property); Ursini v. Goldman, 118 Conn. 554, 559-60 (1934).  As this Court recognized in ruling on defendants' motion to dismiss, a breach of contract claim against an insurance agent is based on "an enforceable agreement to procure specified coverage." Shetucket Plumbing Supply Inc. v. S.C.S. Agency, Inc., 2006 WL 544513 at * 2 (D. Conn. March 3, 2006) (Chatigny, J.).  See also, L.G. DeFelice, Inc. v. Fireman's Ins. Co., 41 F. Supp. 2d 152, 163 (D. Conn. 1998).  Here the undisputed facts show that: (1) SCS agreed in May 2003 to procure a policy effective though May 2004 that would provide blanket coverage for eighteen of the plaintiffs' facilities in Connecticut and Rhode Island, including the Westerly facility damaged in the February 4, 2004 fire; (2) the plaintiffs fully performed (3) SCS breached that agreement: and (4) as a result, the plaintiffs suffered damages.  Thus the plaintiffs have established all of the elements of their breach of contract claim, see Discover Re Managers, Inc. v. Preferred Employers Group, Inc., 2006 WL 2838901 at *3  (D.Conn.  Sept. 29, 2006) (Eginton, J.), and are entitled to summary judgment on Count One of the complaint.  Rametta, supra; Ursini, supra.  Cf. Long Island Lighting Co. v. Steel Derick Barge FSC 99, 725 F.2d 839 (2d Cir. 1984) (upholding trial court's conclusion under New York law that plaintiff breached agreement to procure for defendant insurance covering third-party claims).

A.  SCS Agreed to Obtain Property Insurance Providing Blanket Coverage for Plaintiffs' Connecticut and Rhode Island Facilities.

The uncontested facts demonstrate that SCS, the plaintiffs' longstanding insurance broker and advisor, expressly agreed to obtain property insurance of $5,564,000 for contents and $4,661,000 for real property that would cover the plaintiffs' Connecticut and Rhode Island facilities on a blanket basis.  There is no dispute that from 1995-2002, SCS had advised the plaintiffs that they needed blanket property insurance and had procured appropriate policies for them that included blanket coverage.  See Facts at ¶¶ 11-12.  Mr. Charles testified in his deposition that, on May 23, 2003, he met with the plaintiffs' representatives personally, as he had done for many years, and presented a written insurance proposal, dated May 21, 2003.  Id., ¶ 22.  That proposal listed eighteen of plaintiffs' facilities in Connecticut and Rhode Island, including the Westerly, Rhode Island facility, and represented that SCS would procure a policy for the plaintiffs that would provide real property coverage of $4,661,000 and contents coverage of $5,564,000, both in an agreed amount with valuation of losses at replacement cost.  The written proposal further explained that "[b]uilding and [c]ontents coverage [are] blanket over 18 locations."  Charles Ex. 22.  Facts at ¶¶ 22-25.  Mr. Charles admitted that, based on his advice, the plaintiffs agreed to SCS's proposal, and SCS issued a binder for a property insurance policy conforming to the terms specified in the May 21, 2003 proposal.  The binder stated that "Utica National Insurance Co." would issue property insurance for real property, contents and EDP for "locations as per proposal."  Id., ¶¶ 26, 29-30.

Mr. Charles's admissions of his specific promises to the plaintiffs' representatives in May 2003 are more than sufficient to establish the existence of an express contract

whereby SCS agreed to procure specified coverage for the plaintiffs, and the plaintiffs agreed to purchase it from the defendants.[4]

B. Shetucket Performed But SCS Breached Its Agreement By Failing Both to Obtain the Specified Coverage as Promised and, to Notify the Plaintiffs of the Defects in the Policies.

The uncontested facts also demonstrate SCS's breach of its agreement to procure specified insurance coverage for the plaintiffs.

There is no dispute that Shetucket, as agreed, purchased and fully paid for the blanket property coverage proposed by the defendants. Facts at ¶ 26. There is also no dispute that the policies issued by Utica Group did not provide the blanket coverage SCS promised to procure for the plaintiffs. Id., ¶¶ 34-37. The Connecticut policy from Republic insured the plaintiffs' facilities in Connecticut on a blanket basis, but did not include the Rhode Island properties. The Rhode Island policy from Utica Mutual covered the plaintiffs' two facilities in Rhode Island but specified inadequate insurance limits for those properties. It did not insure the Rhode Island properties on a blanket basis with Shetucket's Connecticut properties. SCS received both policies during the summer of 2003 and by the end of August 2003, Barry Bass of SCS had reviewed them. Id. Before the fire in February 2004, however, no one from SCS asked Utica Mutual to amend the Rhode Island policy so that it would provide limits that were on a blanket basis with Shetucket's Connecticut properties. Id., ¶ 37.[5] And there is no

_____

[4] The undisputed facts also establish SCS's implied agreement to procure blanket property insurance for the plaintiffs based on the parties' conduct and long relationship during which SCS consistently recommended and obtained blanket property coverage for the plaintiffs. See, DeFelice, supra.

[5] Instead Mr. Bass requested on August 11, 2003 that Utica Mutual change the Rhode Island policy to reflect contents at location 1 of $750,000. Facts at ¶ 38.

evidence that SCS attempted to procure alternate coverage for the Rhode Island properties before the fire.  Id., ¶ 40. Thus the plaintiffs have established SCS's failure to obtain the promised insurance coverage.

Moreover, there is no dispute that SCS failed to inform Shetucket promptly that the policies Utica Group issued did not provide the blanket property insurance SCS recommended and agreed to procure.  Although Mr. Charles did not review the Connecticut and Rhode Island policies until February 5, 2004, he knew by late summer 2003 that the Rhode Island policy as issued did not provide coverage for the Rhode Island properties on a blanket basis with the Connecticut properties.  Yet at no time before the fire did he or anyone else at SCS inform the plaintiffs that the insurance SCS procured for them did not conform to the parties' agreement.  Facts at ¶¶ 40, 43-46, 56. Thus, SCS clearly breached its agreement to obtain specified coverage for the plaintiffs.

C. As a Result of SCS's Breach, the Plaintiffs Suffered Damages.

Without question, SCS's failure to obtain the specified coverage as promised clearly resulted in the plaintiffs' financial losses.

The fire on February 4, 2004, destroyed large parts of the plaintiffs' facility in Westerly Rhode Island and more than $1,000,000 worth of inventory stored there. Through its agreement with SCS, the plaintiffs thought they had insured the full value of the inventory and real property in Westerly.  Due to SCS's breach, however, the plaintiffs' insurance coverage was limited, and they suffered substantial uninsured losses.[6]  Mr. Charles conceded that had SCS obtained the property coverage for Shetucket as promised, the plaintiffs' losses would have been fully covered.  Facts at ¶

---

[6] The exact amount of the plaintiffs' losses and the offer of judgment and prejudgment interest to which they are entitled must be litigated at a hearing in damages.

55.  The plaintiffs have, therefore, demonstrated all necessary elements of their breach of contract claim and are entitled to judgment as a matter of law on Count One of the complaint.

## II.  PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THEIR NEGLIGENCE CLAIM AGAINST SCS.

The facts admitted by the defendants show that SCS acted negligently as the plaintiffs' insurance broker, and that SCS's negligence proximately caused the plaintiffs' injuries.  The plaintiffs are accordingly entitled to summary judgment on liability as to Count Five of their complaint.

Although "[i]ssues of negligence . . . are generally not susceptible to resolution on a motion for summary judgment," Snow v. United States, 1993 WL 366521 at *2 (D. Conn. Sept. 8, 1993) (Cabranas, J.), there are exceptions to the rule.  Where, as here, the uncontradicted evidence shows that the defendant violated a clear duty, summary judgment may be entered for the plaintiff in a negligence case.  See, e.g., Banerjee v. Foster, 2007 WL 865688 (Conn.Super. March 5, 2007) (Arnold, J.).  In Banerjee, the plaintiff moved for summary judgment claiming that the defendant insurance company had negligently failed to provide the plaintiff adequate information concerning uninsured motorist coverage as required by statute.  Because, there were no material facts in dispute concerning the defendant's negligence, the court in Banjaree granted summary judgment for the plaintiff.  Id. at *5.  See also, DeJesus v. Rowe, 2002 WL 172666 (Conn. Super. Jan. 8, 2002) (Robinson, J.) (court granted summary judgment for plaintiff injured when defendant negligently rear-ended plaintiffs car); Dunn v. Bilger, 1995 WL 230961 (Conn. Super. April 11, 1995) (Flynn, J.) (court granted summary judgment for plaintiff injured when defendant's bowling ball struck him in the head;

defendant admitted in his deposition that he acted negligently in trying to put his ball in his upper locker while the plaintiff was at his locker below).

Here the plaintiffs have established, through uncontradicted facts, all of the elements of their negligence claim: duty, breach of duty, proximate cause and damages. See Winn v. Posades, 281 Conn. 50, 56 (2007). This Court should accordingly enter summary judgment for the plaintiffs on their negligence claim against SCS.

A.  SCS Owed the Plaintiffs A Duty of Care to Act as a Reasonable Insurance Broker.

Under long-established Connecticut law, SCS owed the plaintiffs a duty as their insurance advisor and broker "to exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty . . . which defeats the insurance which [it] undertakes to secure will render him liable to the principle for the resulting loss." Ursini, supra, 118 Conn. at 559 (insurance broker liable for failing to procure effective burglary insurance for plaintiff).  See also, Dimeo v. Burns, Brooks & McNeil, Inc., 6 Conn.App. 241 (1986) (court correctly charged jury that insurance agent had duty to recommend proper amount of and explain consequences of not having sufficient uninsured motorist coverage); Beacon Industries, Inc. v. Walter Kaye Associates, Inc., 789 F.2d 172, 174 (2d Cir.1986) (insurance broker's duty to exercise reasonable care includes duty to use reasonable care in obtaining best rates available); Passerello v. Lexington Ins. Co., 740 Supp. 933 (D. Conn. 1990) (subagent may be held liable in failing to procure property and business loss insurance in amounts requested).

An insurance broker's responsibilities include the duty to make sure that its client has proper coverage.  Todd v. Malafronte, 3 Conn. App. 16, 19 (1984) (agent negligent in advising plaintiff that she did not need to purchase workers' compensation insurance

to cover employees). See also <u>Hallas v. Boemke and Dobosz, Inc.</u>, 239 Conn. 658, 667-68 (1996) (agent negligent in failing to include mortgagee of property as insured on property insurance application). Whether sued in contract or tort, "the broker's general duty is the same: to act reasonably and without delay to procure the insurance coverage he has promised to obtain and to notify his client promptly if he is unable to procure the requested insurance coverage." <u>Preston v. Chartkoff</u>, 2004 WL 304323 at *4  (Conn. Super. Jan. 30 2004) (Lager, J.).  Timely notification permits the client an opportunity to procure insurance elsewhere. <u>Id.</u> at *4 n. 7.

Here, SCS does not contest its duties.  It admitted, through its president Anthony Charles, that it had the duty to make sure plaintiffs understood the Utica insurance policies.  Facts at ¶ 59.  SCS further acknowledged that, once it discovered that the Rhode Island policy did not conform with the coverage it proposed and agreed to secure, it had the obligation to try to obtain a conforming policy, or to tell plaintiffs in a timely manner about the policy's nonconformance.  Facts at ¶¶ 55, 57.[7]  Thus, there is no dispute that SCS owed the plaintiffs a duty of care.

B.  <u>SCS Breached Its Duty to Exercise Proper Care</u>.

Just as SCS admitted its duties in this case, it has also admitted its breach of those duties.  It is undisputed that in the six months between SCS's receipt of the Utica Group policies and the fire, neither Mr. Charles nor anyone else from SCS informed the plaintiffs that the policies did not provide the property coverage SCS recommended and the plaintiffs requested.  Facts at ¶¶ 34-37, 40, 45.  It is also undisputed that no one

---

[7] Given Mr. Charles's testimony, there is no need for additional expert testimony as to the standard of care an insurance broker such as SCS owes to its clients. See, e.g., <u>Hallas, supra</u> at 670 n.10; <u>Todd, supra</u> at 19-20.

from SCS informed the plaintiffs that the Rhode Island policy did not conform to the insurance application SCS had submitted for the plaintiffs, the insurance proposal dated May 21, 2003, or the insurance binder issued by SCS on May 23, 2003.  Id., ¶¶ 44-46. There is also no question that before the fire on February 4, 2004, SCS never asked Utica Group to change the Rhode Island policy to provide the coverage requested, nor did it attempt to procure the requested coverage elsewhere.  Id., ¶¶ 37, 40.  These facts confirm, without question, SCS's breach of duty.

      C.  <u>SCS's Conduct Proximately Caused its Damages.</u>

      In addition, there is no serious dispute that SCS's failure to procure the requested coverage proximately caused the plaintiffs' losses.

      "[T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries …."<u>Weigold v. Patel</u>, 81 Conn.App. 347, 354-55 (2004) (citations omitted).  While proximate cause is ordinarily a question of fact, the issue becomes one of law when "a fair and reasonable person could reach only one conclusion."  <u>Abrahams v. Young & Rubicam, Inc.</u>, 240 Conn. 300, 307 (1997).

      Here SCS, through Mr. Charles, has admitted that its failure to obtain the blanket coverage in the amounts requested and promised, and its failure to notify the plaintiffs promptly of the deficiencies in the Rhode Island policy, proximately caused the plaintiffs to be underinsured at the time of the fire.  Because they were underinsured, the plaintiffs were unable to recover the full amount of their losses.  Had SCS acted reasonably, and obtained the blanket coverage as promised, or seasonably notified the plaintiffs so that they could obtain adequate alternative coverage for their Westerly, Rhode Island facility, the losses the plaintiffs suffered in the February 2004 fire would

have been covered.  See Facts at ¶ 55.  Given these uncontested facts, a fair and reasonable person could reach only one conclusion:  SCS's negligent conduct proximately caused the plaintiffs' damages.

In summary, SCS does not dispute that:  (1) it negligently failed to obtain the insurance SCS recommended and the plaintiffs requested; (2) it negligently failed to inform the plaintiffs that SCS had not procured that coverage; and (3) its negligence proximately caused the plaintiffs' losses.  Thus, summary judgment should enter for the plaintiffs as to liability on Count Five of the complaint.

## CONCLUSION

The plaintiffs are entitled to summary judgment on Counts One and Five of the complaint.  It is undisputed that SCS breached its agreement to procure the specified blanket coverage for the plaintiffs, and that SCS breached its duty of care as the plaintiffs' insurance broker.  The plaintiffs' losses were proximately caused by SCS's conduct.  This Court should accordingly enter partial summary judgment in favor of the plaintiffs on the issue with liability, and order a hearing in damages.

THE PLAINTIFFS

By: _____
WILLIAM H. CLENDENEN, JR. (ct04261)
Clendenen & Shea, LLC
400 Orange Street
New Haven, Connecticut   06502
Tele: 203/787-1183
Fax: 203/787-2847
office@clenlaw.com
whcj@clenlaw.com

CERTIFICATION:

This is to certify that a copy of the foregoing was mailed postage prepaid, to Joseph G. Fortner, Jr., Esq. and Brian D. Rich, Esq. Halloran & Sage LLP, One Goodwin Square, 225 Asylum Street, Hartford, Ct. 06103, Darren E. Sinofsky, Esq., Morrison Mahoney LLP, One Constitution Plaza, Hartford, Connecticut 06103, Lon A. Berk, Esq., Rhett E. Petcher, Esq., Hunton & Williams LLP, 1751 Pinnacle Dr. Suite 1700, McLean, VA 22102 on the 2nd day of May, 2007.

CLENDENEN & SHEA, LLC