Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1

Not Reported in F.Supp.2d, 2006 WL 544513 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Shetucket Plumbing Supply Inc. v. S.C.S. Agency, Inc.
D.Conn.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
SHETUCKET PLUMBING SUPPLY INC., et al., Plaintiffs,
v.
S.C.S. AGENCY, INC. and Anthony Charles, Defendants.
**No. 3:05-CV-424 (RNC).**

March 3, 2006.

Kevin C. Shea, Nancy Lynn Walker, William H. Clendenen, Jr., Clendenen & Shea, New Haven, CT, for Plaintiffs.
Joseph G. Fortner, Jr., Jude Francois, Halloran & Sage LLP, Hartford, CT, for Defendants.

*RULING AND ORDER*
CHATIGNY, J.
*1 Plaintiffs Shetucket Plumbing Supply Inc. (" Shetucket"), Shetucket Plumbing Supply Co. of Westerly, Inc., and PJ & A LLC ("PJ & A") bring this action against S.C.S. Agency, Inc. ("S.C.S."), an insurance broker, and Anthony Charles ("Charles "), the president of S.C.S, alleging that they have sustained uninsured losses for which the defendants should be held responsible. The complaint pleads claims against both defendants for breach of contract, innocent and negligent misrepresentation, breach of fiduciary duty, negligence, and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen.Stat. §§ 42-110a, *et seq.* The defendants have moved to dismiss all the claims, in whole or in part, except the negligence claim. For the reasons stated below, the motion is denied.

I. *Background*

The complaint alleges the following facts, which are accepted as true for purposes of this ruling. Shetucket is in the business of selling heating and plumbing supplies. It operates eighteen retail and storage facilities at various locations in Connecticut and Rhode Island.

From 1983 to 2003, the plaintiffs relied on the defendants for insurance-related services. These included soliciting proposals from insurance companies, and selecting the ones that were most appropriate for the plaintiffs' needs. Throughout that time, it was understood and agreed that the plaintiffs needed blanket coverage for all their buildings and business property on a replacement cost basis.

In the spring of 2003, defendant Charles, acting through defendant S.C.S., solicited a proposal from Utica National Insurance Company on behalf of the plaintiffs. Charles represented to the plaintiffs that Utica would provide blanket coverage for all eighteen of the plaintiffs' facilities, including replacement cost coverage for buildings in an amount over $4,000,000, and replacement cost coverage for inventory and other contents in an amount over $5,000,000. Relying on these representations, the plaintiffs accepted the proposal.

Utica then issued two policies to the plaintiffs for the period June 1, 2003 through June 1, 2004. The first policy provided blanket coverage for the facilities in Connecticut, including replacement cost coverage for buildings in the amount of $4,270,000, and replacement cost coverage for contents in the amount of $5,460,000. The other policy provided coverage for the facilities in Rhode Island limited to $641,000 for buildings, and $750,000 for contents, based on actual value, not replacement cost. The defendants held the two policies on the plaintiffs' behalf and failed to inform them that the Rhode Island policy did not provide the same blanket coverage as the Connecticut policy.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 2
Not Reported in F.Supp.2d, 2006 WL 544513 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

On February 4, 2004, a fire occurred at a facility in Westerly, Rhode Island, which Shetucket had leased from PJ & A. As a result of the fire, Shetucket lost inventory and other contents worth more than $1,400,000. In addition, a building owned by PJ & A sustained damage in an amount exceeding $561,000.

*2 The plaintiffs promptly submitted claims to Utica seeking full coverage for the losses. Utica declined to provide coverage beyond the limits set forth in the Rhode Island policy, leaving the plaintiffs with substantial uninsured losses. This lawsuit followed.

## II. *Discussion*

To plead a claim in federal court, all one has to do is provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 512.

### *Breach of Contract*

Defendants contend that the breach of contract claim should be dismissed because it is merely duplicative of the negligence claim. Under Connecticut law, an action against an insurance broker for failure to procure insurance may be based on negligence or breach of contract, *see Ursini v. Goldman,* 118 Conn. 554, 559-60, 173 A. 789 (1934), or both, *see Rametta v. Stella,* 214 Conn. 484, 485, 572 A.2d 978 (1990). A breach of contract claim differs from a negligence claim in that it is based on an enforceable agreement to procure specified coverage. *See L.G. Defelice, Inc.* *v. Fireman's Ins. Co.,* 41 F.Supp.2d 152, 163 (D.Conn.1998). The complaint in this action alleges, expressly or by fair implication, that the defendants specifically agreed to procure from Utica blanket coverage, on a replacement cost basis, for all the plaintiffs' facilities in Connecticut and Rhode Island, then failed to do so. This is sufficient to state a claim for breach of contract under Connecticut law.[FN1]

> FN1. The defendants seem to suggest that any harm caused by their alleged failure to procure proper insurance coverage may be fully addressed through the plaintiffs' cause of action for negligence, rendering the plaintiffs' other theories of liability superfluous. Negligence does appear to be the legal theory on which cases of this type ultimately are tried and decided. *See Hallas v. Boehmke and Dobosz, Inc.,* 239 Conn. 658, 661, 686 A.2d 491 (1997); *Todd v. Malafronte,* 3 Conn.App. 16, 18, 484 A.2d 463 (1984)(same). But that is not always so, *see Rametta,* 214 Conn. at 489, 572 A.2d 978; and, in any event, a party is free to plead multiple claims even if one would suffice. *See* Fed.R.Civ.P. 8(e)(2).

The defendants also move to dismiss the breach of contract claim against Charles individually on the ground that the complaint alleges that he acted solely in his capacity as president of S.C.S. The complaint contains no such allegation, as the plaintiffs correctly note. *See* Pls.' Mem. Opp'n Mot. To Dismiss at 22 n. 10. Moreover, the complaint appears to allege that Charles, speaking for himself as an individual, rather than as president of S.C.S., specifically promised the plaintiffs they could rely on him personally to obtain from Utica the insurance coverage he specified. Assuming such a promise was made by Charles, he may be held personally liable for breach of his own contract.[FN2]

> FN2. Whether the plaintiffs can actually prove that they had such a separate contract with Charles individually can be addressed on a motion for summary

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

judgment. *See Tricon Int'l, Ltd. v. United Constr., Inc.,* Case No. X03CV980518862S, 2005 WL 1097103, at *16-20 (Conn.Super.Ct. Apr.1, 2005).

*Innocent and Negligent Misrepresentation*

The defendants move to dismiss the claims for innocent and negligent misrepresentation based on Federal Rule of Civil Procedure 9(b), which requires that averments of fraud or mistake be stated with particularity. The Supreme Court has declined to extend Rule 9(b)'s heightened pleading requirement for averments of fraud or mistake to other contexts, *see Swierkiewicz,* 534 U.S. at 513, and the Second Circuit has refrained from adopting the view that Rule 9(b) applies to claims for negligent misrepresentation, as the plaintiffs correctly point out. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,* 375 F.3d 168, 188 (2d Cir.2004). Even assuming, however, that the Rule does apply in this context, I agree with the plaintiffs that their claims are pleaded with adequate particularity.

*3 To satisfy the particularity requirement of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) (internal quotation omitted). Each of these requirements is satisfied. The complaint alleges that on May 21, 2003, defendant Charles, acting on behalf of defendant S.C.S., assured the plaintiffs that Utica would provide blanket coverage, based on replacement cost, for all the plaintiffs' buildings and business property. The complaint further alleges that this was a misrepresentation because such coverage was not provided with regard to the facilities in Rhode Island. Greater particularity is not required at this stage of the litigation.

*Breach of Fiduciary Duty*

The defendants move to dismiss the breach of fiduciary duty claim as against Charles individually. They do not contend that the relationship between an insurance broker and a customer imposes no fiduciary duty on the broker under Connecticut law. They contend, rather, that the plaintiffs have not alleged that they placed special trust and confidence in Charles individually. The plaintiffs respond that this is a misreading of the complaint. Here again, I agree. The complaint explicitly alleges that "the plaintiffs placed their confidence and trust in the defendants"; "the defendants owed the plaintiffs fiduciary duties"; and "[t]he defendants, Mr. Charles and S.C.S., breached their fiduciary duties to the plaintiffs."

*Connecticut Unfair Trade Practices Act*

The defendants move to dismiss the CUTPA claim on the ground that a negligent misrepresentation does not violate the statute. The plaintiffs respond that the defendants' alleged misrepresentation, although unintentional, violated a provision of the Connecticut Unfair Insurance Practices Act (" CUIPA"), which defines as an unfair and deceptive insurance act or practice "[m]aking, issuing or circulating, or causing to be made, issued or circulated, any ... sales presentation ... which ... [m]isrepresents the benefits, advantages, conditions or terms of any insurance policy." Conn. Gen.Stat. § 38a-816(1)(a) (2004). Research has disclosed no Connecticut appellate opinion analyzing the issue whether a negligent misrepresentation violates this provision of CUIPA, and, if so, whether such a violation is sufficient in itself to support a CUTPA claim, and Superior Court opinions reflect differing views. *Compare Scalise v. Stephens,* No. X01CV020179296S, 2003 WL 22481480, *3 (Conn.Super.Ct. Oct.21, 2003)(motion to strike CUTPA claim based on negligent violation of § 38a-816(1)(a) denied); *Masonicare Corp. v. Marsh USA,* No. CV030821900, 2004 WL 424170, at *4 (Conn.Super.Ct. Feb.18, 2004)(same) *and Healthright, Inc. v. Executive Risk Specialty Ins.,* No. CV000272486S, 2001 WL 838367, *1 (Conn.Super.Ct. June 28, 2001)(motion to strike CUTPA claims based on violation of § 38a-816(1)(a) denied because allegation that insurance agent misrepresented terms of policy sufficient) *with Healthright, Inc. v. Executive Risk*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 2006 WL 544513 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

*Specialty Ins. Co.,* No. CV000272486S, 2001 WL 84209, *2-3 and n. 2 (Conn.Super.Ct. Jan.12, 2001) (motion to strike CUTPA claim based on alleged violation of § 38a-816(1)(a) granted; allegation that insured bought policy based on agent's assurance that coverage would be provided insufficient). The same is true of the related issue, not briefed by the parties here, whether an insurance broker's professional negligence is actionable under CUTPA. *Compare Hotak v. Barth Ins. Agency, Inc.,* No. CV010075027S, 2003 WL 23149917, at *3 (Conn.Super.Ct. Dec.12, 2003) (professional negligence exception to CUTPA does not apply to insurance agents) *with N & L Trucking, LLC v. M.H. Chodos Ins. Agency,* No. CV054011430S, 2005 WL 2503718, at *1 (Conn.Super.Ct. Sept.23, 2005) (professional negligence exception to CUTPA does apply to insurance agents); *Silk, LLC v. Cowles & Connell,* No. X04CV03103524S, 2004 WL 1245915, *3 (Conn.Super.Ct. May 25, 2004) (same); *Precision Mech. Servs., Inc. v. T.J. Pfund Assocs., Inc.,* No. CV980416692S, *10 n. 11 (Conn.Super.Ct. Dec. 22, 2003)(same) and *1049 Asylum L.P. v. Kinney Pike, Ins.,* No. CV020816344, 2003 WL 21496543, *4 (Conn.Super.Ct. May 20, 2003)(same). Given this state of the law, any prediction as to how the Connecticut Supreme Court would rule on these issues should await a motion for summary judgment, when the Court will have the benefit of a better developed record and more thorough briefing, especially since deferring a ruling should have no material impact on the scope of discovery.

### III. *Conclusion*

*4 Accordingly, the motion to dismiss [doc. # 26] is hereby denied.

So ordered.

Dated at Hartford, Connecticut this 2nd day of March 2006.

D.Conn.,2006.
Shetucket Plumbing Supply Inc. v. S.C.S. Agency, Inc.
Not Reported in F.Supp.2d, 2006 WL 544513

(D.Conn.)

END OF DOCUMENT

.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Slip Copy  Page 1

Slip Copy, 2007 WL 987481 (D.Conn.)
**(Cite as: Slip Copy)**

**Smith** v. **Rowland**
D.Conn.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Emmanuel SMITH, Plaintiff,
v.
John G. ROWLAND, et al., Defendants.
**No. 3:04-CV-814(RNC).**

March 31, 2007.

Emmanuel Smith, Somers, CT, pro se.
Matthew B. Beizer, Attorney General's Office, MacKenzie Hall, Hartford, CT, for Defendants.

*RULING AND ORDER*
ROBERT N. CHATIGNY, United States District Judge.
*1 Plaintiff Emmanuel Smith, a Connecticut inmate proceeding *pro se* and *in forma pauperis,* brings this action pursuant to 42 U.S.C. § 1983 alleging principally a failure to protect him against assaults by other inmates in violation of the Eighth Amendment.[FN1] Defendants have moved for summary judgment. For the reasons that follow, the motion is granted.

> FN1. Plaintiff names the following defendants: Former Governor John G. Rowland, the Connecticut Department of Correction, Commissioner of Correction Theresa Lantz, Lieutenant Bill Blue, Correction Officer Sansone, the State of Connecticut, Fairfield County, Disciplinary Hearing Officer Murry, Investigating Officer Milano, Correction Officer Tamboro and Warden Walter Ford.

I. *Standard of Review*

Summary judgment may be granted when there is no "genuine issue as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To withstand a properly supported motion for summary judgment, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)

II. *Facts*

The record before the court, viewed most favorably to the plaintiff, would permit a jury to find the following facts. On February 18, 2003, plaintiff was serving a term of imprisonment at the Bridgeport Correctional Center. On that day, Lieutenant Blue and Correction Officer Sansone transferred him from a low security housing block to a high security housing block, where he remained throughout the time pertinent to this case.

On May 20, 2003, he was sitting in a room with an inmate named Elliston. The day was very hot and a fan was running. Elliston turned off the fan for no apparent reason and refused to turn it back on. When plaintiff asked Elliston to permit him to sit under the fan, Elliston refused and slashed the plaintiff with a homemade knife. Plaintiff was taken to the medical department where a nurse examined his injuries. The nurse noted that the had lacerations on his abdomen and left flank, and bruises on his neck, left shoulder, right elbow and back. The nurse cleaned the lacerations, applied antibiotic ointment, and instructed the plaintiff to return to the medical department as necessary.

On November 11, 2003, an inmate named Snell threw scalding water at the plaintiff causing first and second degree burns to his neck and chest. A nurse examined the plaintiff and telephoned a physician regarding treatment. The physician prescribed ointment and pain medication and plaintiff was scheduled to be seen by a physician the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 2

Slip Copy, 2007 WL 987481 (D.Conn.)
**(Cite as: Slip Copy)**

following day.FN2

> FN2. The amended complaint alleges that plaintiff received no medical attention for his injuries or for diabetes, that he was housed with an inmate known to suffer from tuberculosis, that he contracted a skin fungus as a result of unsanitary water, and that his diet is nutritionally inadequate. Plaintiff does not address these claims in his opposition to the motion for summary judgment and thus appears to have abandoned them. Moreover, his allegations regarding these matters do not refer to any of the defendants, and he offers no evidence to support a finding that any of them were responsible for his medical care, housing assignment, water or diet. Accordingly, these claims are summarily dismissed.

### III. *Discussion*

In support of their motion for summary judgment, defendants argue that (1) the claims against them for monetary damages in their official capacities are barred by the Eleventh Amendment; (2) they were not involved in any of the alleged unconstitutional conduct set forth in the amended complaint; (3) plaintiff has failed to state a claim upon which relief may be granted; and (4) they are entitled to qualified immunity.

#### A. *Eleventh Amendment*

The Eleventh Amendment prohibits suits for money damages against states or state actors in their official capacities. *See Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity, *see Quern v. Jordan,* 440 U.S. 332, 345 (1979), and Connecticut has not otherwise waived its immunity. Accordingly, the motion for summary judgment is granted as to the claims for money damages against defendants in their official capacities.

#### B. *Section 1983*

*2 Section 1983 authorizes suits against any "person" who violates the plaintiff's federal rights while acting under state law. It is well-settled that states and state agencies are not "persons" within the meaning of section 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64 (1989). Accordingly, the claims against the State of Connecticut and the Department of Correction must be dismissed.

To prevail on a claim under section 1983, plaintiff must prove that the defendant was personally involved in the alleged wrongdoing. *See Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). Consistent with this requirement, "[a] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002). In the absence of personal involvement, a supervisor may be held liable only if he or she had notice that unconstitutional acts were occurring and failed to act or was grossly negligent in failing to supervise the subordinates who committed the wrongful acts at issue. *See Ziemba v. Armstrong,* 430 F.3d 623, 625 (2d Cir.2005).

No personal involvement has been alleged or shown with regard to the following defendants: Fairfield County, Hearing Officer Murry, Investigating Officer Milano. Thus, the claims against these defendants must be dismissed.

Plaintiff alleges that defendants Rowland, Lantz and Ford permitted a policy to continue that resulted in his being harmed by other inmates, and that they were grossly negligent in supervising subordinates. These general allegations have not been substantiated. There is no evidence that any of these defendants failed to act on information that unconstitutional acts were occurring, or was grossly negligent in supervising subordinates. Accordingly, the motion for summary judgment is granted in favor of these defendants.

After taking the foregoing analysis into account, the only remaining defendants are Lieutenant Blue and Correction Officers Sansone and Tamboro. Plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 3
Slip Copy, 2007 WL 987481 (D.Conn.)
**(Cite as: Slip Copy)**

claims that these defendants are liable for (1) failing to protect him against the assaults he suffered at the hands of other inmates in violation of the Eighth Amendment, and (2) transferring him to the high security housing block without a hearing in violation of due process. I will now address each of these claims.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to protect inmates from harm at the hands of other inmates. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). To establish a violation of this duty, plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm," and that defendants showed "deliberate indifference" to his health or safety. *Id.* at 834. A prison official is deliberately indifferent when he " has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Dep't Of Corr.,* 84 F.3d 614, 620 (2d Cir.1996).

*3 The record does not support a finding of deliberate indifference on the part of defendants Blue, Sansone or Tamboro. Plaintiff alleges that these defendants transferred him to the high security housing block in February 2003, where the assaults eventually occurred. He offers no evidence, direct or circumstantial, to support a finding that any of them knew or had reason to know of a substantial risk that he would be assaulted. Three months passed before the first assault occurred, and the second occurred about six months later. The assaults involved different inmates and circumstances. Plaintiff does not allege, and has no evidence to prove, that the defendants were aware of a substantial risk that he would be assaulted and simply ignored it.

With regard to the due process claim, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement ... [but] may arise from state policies or regulations, subject to the important limitations set forth" in *Sandin v. Conner,* 515 U.S. 472 (1995). *Wilkenson v. Austin,* 545 U.S. 209, 221-22 (2005). In this case, classification and transfer of prisoners rests in the discretion of state prison officials, and no state regulation or directive limits this discretion. *See* Conn. Gen.Stat. § 18-81 (" The commissioner shall be responsible for establishing ... classification ... programs throughout the department."). Moreover, the record does not support a finding that confinement in the high security housing block posed an "atypical and significant hardship on the [plaintiff] in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-85.

### IV. *Conclusion*

For the foregoing reasons, the motion for summary judgment is hereby granted. Judgment will enter in favor of the defendants dismissing the claims with prejudice.

So ordered this 31st day of March 2007.

D.Conn.,2007.
Smith v. Rowland
Slip Copy, 2007 WL 987481 (D.Conn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1993 WL 366521 (D.Conn.)
**(Cite as: Not Reported in F.Supp.)**

Snow v. U.S.
D.Conn.,1993.
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
Carmel SNOW
v.
UNITED STATES of America.
**Civ. A. No. 3:92-277 (JAC).**

Sept. 8, 1993.

Peter Kelly, New Haven CT, for plaintiff.
H. Gordon Hall, Asst. U.S. Atty., New Haven, CT, for defendant.

RULING ON MOTION FOR SUMMARY JUDGMENT
JOSÉ A. CABRANES, Chief Judge:
*1 This action for damages arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* Pending before the court is the plaintiff's Motion for Summary Judgment as to Liability Only (filed May 21, 1993).

BACKGROUND

The following facts are not disputed by the parties.
On December 4, 1990, at around 4:45 p.m., the plaintiff was operating her motor vehicle in a northerly direction on Route 139 in North Branford, Connecticut. She slowed her vehicle and was struck in the rear by a motor vehicle driven by Martin L. McCullough, II, an employee of the defendant. At the time of the collision, McCullough was acting within the scope of his employment as a Special Agent of the Federal Bureau of Investigation, and the vehicle he was driving was owned by the FBI.

The plaintiff filed a motion for summary judgment as to liability only on May 21, 1993, and after full briefing the court heard oral argument on September 7, 1993.

DISCUSSION

I.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities against the moving party. *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932 (1987). The court must therefore view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

II.

In support of her motion for summary judgment, the plaintiff claims that she slowed her vehicle in a reasonable and foreseeable manner due to the heavy volume of traffic in front of her. She contends that the collision was caused entirely by McCullough's negligence and that there is absolutely nothing in the record to support a claim of contributory negligence. According to the plaintiff, there are no genuine issues of material fact that remain for trial.

Contrary to the plaintiff's assertion, however, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1993 WL 366521 (D.Conn.)
**(Cite as: Not Reported in F.Supp.)**

defendant has done more than merely speculate as to the possibility of contributory negligence. The McCullough Declaration [FN1] asserts that the plaintiff "stopped suddenly and without warning" and that McCullough was therefore unable to avoid the collision.[FN2] The issue of whether the plaintiff was in fact negligent, and, if so, whether her negligence was greater than that of Special Agent McCullough,[FN3] involves a factual dispute that cannot be resolved at the summary judgment phase. Indeed, the percentage of negligence, if any, attributable to the plaintiff is precisely the type of factual issue that must be left for the trier of fact.

### III.

*2 Although the plaintiff concedes that most motor vehicle **negligence** actions are not **susceptible** to motions for **summary judgment**, she cites *Kubeck v. Foremost Foods Co.,* 190 Conn. 667 (1983), and *Taddei v. Schwartz,* 12 Conn.App. 659 (1987), for the proposition that rear-end collision cases represent an exception to this general principle. Both of these cases, however, focus exclusively on issues concerning damages and merely mention as background that summary judgment as to liability had been granted for the plaintiff. The plaintiff has not located a single case-and the court has found none-which addresses with any degree of depth the issue of summary judgment as to liability in rear-end collision cases. In addition, the plaintiff has not suggested, much less shown, that either of these cases presents a set of facts similar to this action-other than the mere fact that they involved rear-end collisions. Finally, the plaintiff does not-and cannot-support the position that in *any* case involving a rear-end collision, a plaintiff is entitled to judgment as a matter of law. Without more, the mere acknowledgement in these two cases that summary judgment had been granted in favor of a plaintiff involved in a rear-end collision is not sufficient to warrant the final disposition of this case-at least insofar as liability is concerned-at the summary judgment stage.

### IV.

In sum, the issue of contributory negligence presents a genuine issue of material fact. It is ultimately for the trier of fact to determine which of the conflicting accounts of the accident at issue in this case is the more credible one. Unfortunately for the plaintiff, issues involving **negligence** and contributory **negligence**-which are by their very nature fact specific-are generally not **susceptible** to resolution on a motion for **summary judgment**. Viewing the inferences to be drawn from the facts in the light most favorable to the defendant, and resolving ambiguities in favor of the defendant, the court has no choice in the circumstances presented other than to deny the plaintiff's motion for summary judgment.

### CONCLUSION

Based upon a review of the record, including the arguments of counsel at oral argument, and for the reasons stated above, the plaintiff's Motion for Summary Judgment (filed May 21, 1993) (doc. # 21) is hereby DENIED.

It is so ordered.

FN1. In her Reply (filed June 16, 1993) (doc. # 26), the plaintiff objected to the Declaration of Special Agent Martin L. McCullough, II ("McCullough Declaration"), which is attached to the defendant's Memorandum in Opposition (filed June 9, 1993) (doc. # 24), on the ground that it is not an affidavit and hence does not comply with Fed.R.Civ.P. 56(e).
At oral argument, however, counsel for the plaintiff withdrew the objection, conceding that the McCullough Declaration complies with 28 U.S.C. § 1746 and is therefore competent summary judgment evidence. Absent objection from the plaintiff, therefore, the court can, and will, consider the McCullough Declaration in reaching a decision in this matter.

FN2. McCullough Declaration at ¶¶ 6-7.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1993 WL 366521 (D.Conn.)  
**(Cite as: Not Reported in F.Supp.)**

Page 3

> FN3. The plaintiff's counsel conceded at oral argument that *if* the plaintiff's negligence was in fact greater than that of Special Agent McCullough, Conn.Gen.Stat. § 52-572h(b) would bar relief.

D.Conn.,1993.  
Snow v. U.S.  
Not Reported in F.Supp., 1993 WL 366521 (D.Conn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.