UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHETUCKET PLUMBING SUPPLY INC., <br> SHETUCKET PLUMBING SUPPLY CO. <br> OF WESTERLY, INC., and PJ&A LLC <br><br> Plaintiffs, <br><br> v. <br><br> S.C.S. AGENCY, INC. <br> and ANTHONY CHARLES, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : CASE NO. 3:05-CV-00424 (RNC) <br> : <br> : <br> : <br> : <br> : |
| S.C.S. AGENCY, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> UTICA MUTUAL INSURANCE COMPANY, <br><br> Third-Party Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

RULING AND ORDER

This matter is before the Court on a motion for summary judgment filed by third-party defendant Utica Mutual Insurance Company ("Utica Mutual"). For the reasons stated below, the motion is granted.

I. Standard of Review

Summary judgment may be granted when there is no "genuine issue as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To withstand a properly supported motion for summary judgment, the opposing party must come forward with "specific facts showing that there

is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

II. Background

In April 2003, S.C.S. Agency, Inc. ("S.C.S."), an insurance broker, acting on behalf of its customer Shetucket Plumbing Supply, Inc. ("Shetucket"), sought property insurance coverage from Utica National Insurance Group ("Utica National"), a group of affiliated mutual insurance companies that includes Utica Mutual. S.C.S.'s application sought blanket coverage for all eighteen of Shetucket's locations in Connecticut and Rhode Island. Utica National replied with a written quote for "CT only," which stated "Rhode Island property/gl not included." Utica National later provided an oral quote for the properties in Rhode Island. S.C.S. asked Utica National to "bind coverage per [their] quotes."

In June 2003, S.C.S. received a Utica Mutual policy that provided blanket coverage for Shetucket's properties in Connecticut. The "schedule of premises" contained in the policy included no properties in Rhode Island. In August 2003, S.C.S. received a second Utica Mutual policy that provided coverage for Shetucket's two properties in Rhode Island. The policy provided coverage limits for the Rhode Island properties that were lower than the limits of the blanket coverage applicable to the properties in Connecticut.

2

An employee of S.C.S., Barry Bass, received and reviewed both policies. He asked Utica Mutual to make some changes to the Rhode Island policy, but never asked that either policy be changed to provide the Rhode Island properties with the same blanket coverage applicable to the Connecticut properties. Anthony Charles, a principal of S.C.S., understood based on conversations with Mr. Bass that the policies did not provide blanket coverage for the Rhode Island properties, although he did not read the policies himself.

On February 4, 2004, a fire occurred at Shetucket's location in Westerly, Rhode Island. After the fire, Mr. Charles asked Utica Mutual to extend to the Westerly property retroactively the blanket coverage applicable to the Connecticut properties. In a letter requesting this change, he admitted that Mr. Bass had made a mistake in not alerting Utica Mutual that the policy for the Rhode Island properties did not provide blanket coverage as requested in the application. Utica Mutual declined to make the requested change.

Shetucket subsequently sued S.C.S. to recover damages for uninsured losses sustained in the fire. S.C.S. then impleaded Utica Mutual.

III. Discussion

A.

S.C.S. claims that it is entitled to indemnification from

Utica Mutual pursuant to a written agency agreement.  S.C.S. points to a provision in the agreement requiring Utica Mutual to indemnify it with regard to losses resulting from Utica Mutual's "errors in the electronic or mechanical processing of policies and endorsements."  This provision does not apply because the losses at issue here did not result from any such error.  The Rhode Island policy was issued manually, not electronically, and there is no evidence of any relevant mechanical error.

S.C.S. also relies on a provision in the agency agreement requiring Utica Mutual to indemnify it for losses arising out of Utica Mutual's "acts in investigating, settling, or paying claims."  S.C.S. urges that this provision applies to Utica Mutual's allegedly wrongful refusal to pay Shetucket the full amount Shetucket would have recovered if the policy for the Rhode Island properties provided the blanket coverage requested in the initial application.  In support of this argument, S.C.S. contends that Utica Mutual was obliged to provide blanket coverage as requested in the application, Utica Mutual intended to provide blanket coverage in conformity with the application, and there was some ambiguity in the policies as to whether such coverage was actually provided.   Utica Mutual responds that its decision to pay Shetucket's claims in accordance with the coverage limits actually listed in the Rhode Island policy does not entitle S.C.S. to indemnification under the agency agreement.

I agree.

Under New York law, S.C.S.'s application did not bind Utica Mutual to provide the blanket coverage requested in the application. See Bullis v. Metro. Life Ins. Co., 380 N.Y.S.2d 525, 528 (Sup. Ct. 1976) (citing Prudential Ins. Co. v. Snyder, 254 N.Y.S. 732 (1928)) (insurance application in no way binds insurer to issue policy because application is only a proposal to contract on terms the insurer may accept or reject).[1] Rather, in response to S.C.S's application, Utica Mutual could accept or reject the requested coverage, or respond with different terms. See Continental Assur. Co. v. Sanasee, No. 04-CV-412(ILG), 2006 WL 335419, at *3 (E.D.N.Y. Feb. 13, 2006) (citing Blumberg v. Paul Revere Life Ins. Co., 177 Misc. 2d 680, 682 (N.Y. Sup. Ct. 1998)) (when insurer issues policy with different terms than the insured's offer, the policy is treated as a counteroffer).

S.C.S. contends that a reasonable juror could find that Utica Mutual intended to provide the blanket coverage requested

---

[1] Under Connecticut's choice of law rules, New York law applies because New York has the most significant relationship to the agency agreement between S.C.S and Utica Mutual. See, e.g., MM Global Servs., Inc. v. Dow Chem. Co., 283 F. Supp. 2d 689, 699 (D. Conn. 2003) (citing Reichhold Chems., Inc. v. Hartford Accident & Indem. Co., 243 Conn. 409-10 (1997) (in contract disputes, court examines: "(a) the place of contracting . . . (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties"). The agency agreement was made in New York between S.C.S., a New York agency, and Utica Mutual, a New York company, and the communications at issue occurred in New York.

in the application because Utica Mutual failed to provide written notice, other than through the policies themselves, that it was rejecting S.C.S.'s terms and making a counteroffer. This argument is unavailing because it ignores the terms of the policies. In addition, it overlooks the terms of the written and oral quotes that S.C.S. received in response to the application, as well as a contemporaneous note in the underwriting file documenting the underwriter's intention to limit the blanket coverage to the Connecticut properties.[2] On the record before the Court, viewed fully and most favorably to S.C.S., a reasonable juror would be bound to find that the policies issued by Utica Mutual accurately reflected underwriting decisions to issue two separate policies for the Connecticut and Rhode Island properties, respectively, with blanket coverage for the Connecticut properties only.

    S.C.S.'s argument also fails because the terms of the Rhode Island policy are unambiguous. Mr. Charles has acknowledged that the policy does not provide blanket coverage. See, e.g.,In re Prudential Lines Inc., 158 F.3d 65, 77 (2d Cir. 1998) (when the terms of an insurance policy are unambiguous, their plain meaning governs). Though Mr. Charles did not review the policy until after the fire, in the absence of fraud or other wrongful

---

[2] The internal NYMRO Checklist in Utica National's "Shetucket Underwriting File" includes a handwritten note stating "Blanket Connecticut only." Rich Aff. Ex. N at No. 00255.

6

conduct, New York law presumes that the holder of an insurance policy has reviewed the policy and assented to its terms. Brownstein v. Travelers Cos., 652 N.Y.S.2d 812, 814 (N.Y. App. Div. 1997). S.C.S. offers no evidence of fraud or similar misconduct on the part of Utica Mutual. Thus, as a matter of law, S.C.S. must be deemed to have assented to the Rhode Island policy as issued.

B.

S.C.S. also claims a right to be indemnified by Utica Mutual under principles of common law indemnification and negligence. To prevail on this claim, S.C.S. must present evidence that would permit a reasonable jury to find that S.C.S. is being called on to pay for a wrong committed by Utica Mutual. See Taft v. Shaffer Trucking, Inc., 383 N.Y.S.2d 744, 746 (N.Y. App. Div. 1976).[3] The evidence in the record would not permit a reasonable juror to make such a finding. S.C.S. alleges that Utica Mutual had a duty to provide the coverage requested in the application. As just discussed, however, Utica Mutual was entitled to respond with a counteroffer containing different terms. S.C.S. also alleges that Utica Mutual was obliged to provide clearer notice that the blanket coverage requested in the

---

[3] Under New York law, contracts are not construed to indemnify a party against its own negligence "unless such intention is expressed in unequivocal terms." Willard Van Dyke Prods., Inc. v. Eastman Kodak Co., 12 N.Y.2d 301, 304 (1963)(internal citations omitted). In the agency agreement, Utica Mutual did not purport to indemnify SCS for claims arising from SCS's negligence.

7

application was not being provided.  But it is undisputed that S.C.S. knew the policy for the Rhode Island properties did not provide the requested coverage, and Mr. Charles has stated that S.C.S. erred in failing to alert Utica Mutual that the policy did not provide the coverage sought.  On this record, a reasonable jury would have to reject S.C.S.'s claim.  See e.g., Fanta-Sea Swim Ctr., Inc. v. Rabin, 494 N.Y.S.2d. 568, 569 (N.Y. App. Div. 1985) (no indemnity when broker negligently misrepresented to plaintiff that coverage was obtained when in fact it was not).

C.

S.C.S. claims that Utica Mutual breached an implied-in-fact contract when it failed to provide coverage to Shetucket in accordance with S.C.S.'s application and failed to inform S.C.S. or Shetucket that the coverage requested in the application was not being provided.  Here again, S.C.S.'s claim is undercut by the undisputed facts.

Under New York law, a contractual obligation cannot be implied when an express contract covers the subject matter, except when "the defendant has frustrated the plaintiff's performance of his duties under the contract." Knobel v. Manuche, 536 N.Y.S.2d 779, 781 (N.Y. App. Div. 1989) (internal citation omitted).  The record discloses no act or omission by Utica Mutual that interfered with S.C.S.'s performance of its duties under the parties' agency agreement.  Rather, a reasonable

jury would have to find that S.C.S. knew the policy did not provide the coverage sought initially, yet delayed asking for a change in the policy until after the fire.

D.

Finally, S.C.S. claims that Utica Mutual's failure to provide coverage to Shetucket in accordance with the application violated an implied covenant of good faith and fair dealing. This claim must be rejected because it is merely duplicative of the other contract claims. See Witherspoon v. Rappaport, No. 02-9039, 65 Fed. Appx. 356, 358-359 (2d Cir. 2003) (internal citation omitted) (scope of liability for breach of covenant is narrow and "cannot give rise to additional liability if it merely replicates the liability for breach of the underlying contract, nor can it create new contractual rights or impose additional duties"). To the extent it is not duplicative, moreover, it necessarily fails because breach of the covenant requires proof of fraud, malice, bad faith, other intentional wrongdoing, or reckless indifference to the rights of others such as gross negligence. See T.P.K. Constr. Corp. v. Southern Am. Ins., 752 F. Supp. 105, 112 (S.D.N.Y. 1990) (citing Kalisch-Jarcho, Inc. v. New York, 58 N.Y.2d 377, 384-85 (1983)).  As discussed above, a reasonable jury could not make such a finding on the record here.

IV.  Conclusion

Accordingly, the motion for summary judgment [doc. #140] is

hereby granted.  The Clerk will enter judgment in favor of the third-party defendant dismissing the third-party complaint.

So ordered this 17th day of October 2007.

                                        _____/s/_____
                                              Robert N. Chatigny
                                        United States District Judge