```
UNITED STATES DISTRICT COURT
    DISTRICT OF CONNECTICUT

SHETUCKET PLUMBING SUPPLY INC.,  :
ET AL.,                          :
                                 :
    Plaintiffs,                  :
                                 :
v.                               :   CASE NO. 3:05-CV-424(RNC)
                                 :
S.C.S. AGENCY, INC. and          :
ANTHONY CHARLES,                 :
                                 :
    Defendants.                  :
```

RULING AND ORDER

Plaintiffs Shetucket Plumbing Supply Inc. and Shetucket Plumbing Supply Co. of Westerly, Inc., both Connecticut corporations referred to collectively as "Shetucket," and PJ&A, LLC ("PJ&A"), a Connecticut real estate and investment partnership affiliated with Shetucket, seek damages against S.C.S. Agency, Inc. ("S.C.S."), a corporation with a principal place of business in New York, and its president, Anthony Charles ("Charles"), a New York resident, for breach of contract, innocent and negligent misrepresentation, breach of fiduciary duty, negligence, and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, et seq. Plaintiffs have moved for partial summary judgment against S.C.S. on the breach of contract and negligence claims with regard to liability only [doc. # 175]. For reasons explained below, the motion is granted as to the negligence claim but denied as to the claim for breach of contract.

Facts

After careful review of the parties' Local Rule 56 statements in light of the deposition testimony of Mr. Charles, the following facts are deemed established for purposes of the present motion.[1]

At all relevant times, plaintiff Shetucket was in the business of selling heating and plumbing supplies. Shetucket owned or operated twenty retail and storage facilities, comprised of eighteen in Connecticut, and two in Rhode Island, including a facility in Westerly, Rhode Island, which was owned by plaintiff PJ&A.

Defendant Charles is an independent insurance agent and president of defendant S.C.S. Beginning in 1983, he and his firms agreed to select and procure appropriate insurance for plaintiffs, and plaintiffs agreed to purchase insurance through him and his firms. Since approximately 1995, S.C.S. has been the insurance broker for plaintiffs, and plaintiffs have purchased essentially all their commercial insurance policies through

---

[1] Plaintiffs' Local Rule 56 (a)(1) Statement consists of sixty-one separately numbered paragraphs. Defendants' Local Rule 56(a)(2) Statement states that the factual assertions in fifty of these paragraphs are "admitted." The factual assertions in three of the other paragraphs may be deemed admitted because they have not been squarely denied with specific citation to evidence in the record as Local Rule 56(a)(3)requires (¶ 26, 50, 55). The assertions in the remaining eight paragraphs concern ultimate legal conclusions as distinct from primary facts (¶ 34, 57, 58, 59, 60, 61) or relate to damages rather than liability (¶ 47, 48).

S.C.S. Charles has been the principal of S.C.S. responsible for plaintiffs' account.

Beginning no later than 1995, Charles and S.C.S. advised plaintiffs to purchase blanket insurance coverage for their commercial property in Connecticut and Rhode Island on a replacement cost basis. Property insurance with blanket coverage means that the limits shown in the policy apply to all locations listed in the policy. Charles and S.C.S. recommended blanket coverage in order to protect plaintiffs' sizable inventory of heating and plumbing supplies, which moved among the various facilities in Connecticut and Rhode Island.

On April 23, 2003, S.C.S. completed a commercial property insurance application covering plaintiffs' twenty locations in Connecticut and Rhode Island for the period June 1, 2003 through June 4, 2004. The application sought replacement cost coverage on a blanket basis in the amount of $4.6 million for real estate and $5.5 million for contents. Mr. Charles delivered the application to Utica National Insurance Group ("Utica Group"), a group of several affiliated insurance companies, including Utica Mutual Insurance Company ("Utica Mutual") and Republic Franklin Insurance Company ("Republic").

The underwriter at Utica Group responsible for reviewing the application and determining what kind of insurance to offer in response to it was Denise Sog. On May 21, 2003, she provided a

written quote to S.C.S. specifically stating that the insurance was for "CT only" and that property in Rhode Island was "not included." The next day, she provided an oral quote to Barry Bass of S.C.S. for a policy that would apply to property in Rhode Island.

On May 23, 2003, Mr. Charles gave plaintiffs a written insurance proposal on behalf of S.C.S. The proposal stated that S.C.S. would undertake to procure property insurance providing blanket replacement cost coverage for eighteen of plaintiffs' locations in Connecticut and Rhode Island, including the Westerly facility. The blanket limits were $4,661,000 for real property and $5,564,000 for contents. Plaintiffs accepted the proposal and agreed to purchase the policy through S.C.S. Mr. Charles gave plaintiffs an insurance binder stating that "Utica National Insurance Co." would provide insurance covering plaintiffs' "locations as per proposal." The binder bound blanket coverage for the eighteen locations covered by the proposal. Mr. Charles did not give plaintiffs the reverse side of the binder form, which states, "[T]his binder is cancelled when replaced by a policy."

On June 26, 2003, S.C.S. received a policy issued by Republic. The policy provided blanket coverage for Shetucket's properties in Connecticut only. The policy did not apply to Shetucket's properties in Rhode Island. On August 6, 2003,

4

S.C.S. received a policy issued by Utica Mutual. This policy provided coverage for Shetucket's properties in Rhode Island, but not the properties in Connecticut. The policy provided specific coverage limits, not blanket coverage, based on actual value, not replacement cost.

By the end of August 2003, Mr. Bass of S.C.S. had reviewed each of these two policies. He recognized that the Utica Mutual policy did not provide the coverage called for by the proposal and binder and told Mr. Charles that the policy was incorrect. Mr. Charles instructed Mr. Bass to contact Utica Mutual and get the nonconformity fixed.[2]

Plaintiffs were not provided with the policies and were unaware that the Utica Mutual policy failed to conform with the insurance proposal and binder given to them by Mr. Charles. Mr. Charles understood that he had an obligation to notify the plaintiffs of the nonconforming Utica Mutual policy but he did not alert them (apparently because he mistakenly assumed that Mr. Bass would get the policy fixed without delay). As a result, the plaintiffs continued to believe that they had blanket replacement cost coverage as stated in the proposal and binder.

---

[2] See Continued Deposition of Anthony Charles, Sept. 13, 2006, at 184-85. Mr. Charles's testimony precludes S.C.S. from arguing that it reasonably believed the policy provided coverage in conformity with the binder. See Heil v. Santoro, 147 F.3d 103, 110 (2d Cir. 1998) ("a party opposing summary judgment does not create a triable issue by denying his previously sworn statements").

5

Mr. Bass subsequently had some communication with Utica Mutual concerning the policy. But there is no evidence that he asked Utica Mutual to provide coverage in conformity with the proposal and binder as Mr. Charles intended. Mr. Charles did not follow up with Mr. Bass or Utica Mutual. Nobody else at S.C.S. took corrective action.

On February 4, 2004, a fire occurred at the facility in Westerly, which Shetucket leased from PJ&A. The fire resulted in extensive damage to the real estate and destroyed more than one million dollars of inventory. Plaintiffs promptly submitted claims seeking full coverage for their losses.

On February 17, 2004, Mr. Charles sent a letter to the Utica Group requesting that it provide coverage for plaintiffs' losses above the limits specified in the Utica Mutual policy. In his letter, Mr. Charles stated: "When the policies were issued the [Customer Service Representative] in my office [i.e. Mr. Bass] did make the mistake of not alerting your underwriter that the policy had not been issued as the application had requested." Letter from Anthony W. Charles to Utica National (Feb. 17, 2004). Mr. Charles's request was denied, leaving plaintiffs with substantial uninsured losses. Had coverage been provided on a blanket replacement cost basis in conformity with the proposal and binder given to plaintiffs by Mr. Charles on behalf of S.C.S., plaintiffs' losses would have been fully covered.

III. Discussion

Summary judgment may be granted when there is no "genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To withstand a properly supported motion for summary judgment, the opposing party must point to disputed issues of material fact that could reasonably be resolved in its favor in light of evidence in the summary judgment record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the absence of such a genuinely disputed issue, summary judgment is appropriate.

A. Negligence

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." LePage v. Horne, 262 Conn. 116, 123 (2002)(internal quotation marks omitted). Plaintiffs claim that defendants owed them a duty to use reasonable care to procure the coverage called for by the insurance proposal and binder and to provide prompt notice if they were unable to do so. They further contend that the defendants breached this duty, and that the breach caused pecuniary harm in the form of the uninsured losses for which they seek compensation. In moving for summary judgment on this negligence claim as to liability only, plaintiffs contend that on the record now before the Court the issues of duty, breach and causation must be resolved in their favor as a matter

7

of law. I agree.

Under Connecticut law, when an insurance broker undertakes to procure a policy for a customer that provides protection against a designated risk, the broker owes the customer a duty to exercise reasonable skill, care, and diligence in procuring the insurance. See Ursini v. Goldman, 118 Conn. 554, 559 (1934). Defendants contend that whether they acted as the plaintiffs' broker - and thus owed them the duty of care described in Ursini - presents an issue of fact for a jury to decide. They do not deny that they undertook to procure the insurance described in the proposal and binder. They contend, rather, that in doing so they acted solely as insurance agents on behalf of the Utica Group.

In light of the admitted facts concerning the long-term relationship between the plaintiffs and Mr. Charles, in which Mr. Charles advised the plaintiffs concerning their insurance needs and repeatedly procured insurance for them through different insurance companies, a reasonable jury would have to find that in undertaking to procure specified insurance for the plaintiffs for the period June 2003-04, Mr. Charles and S.C.S. acted as plaintiffs' agent.[3] More fundamentally, the duty of care

---

[3] Defendants have a proposed expert witness on insurance matters who has provided them with a written report in which he states, without explanation, that in his opinion, Mr. Charles was not acting as an agent or broker for the plaintiffs. Report of Paul F. Amoruso, at 5. The proposed expert's opinion on this

8

articulated in Ursini with reference to insurance brokers "applies as well to insurance agents" like Mr. Charles and S.C.S. Todd v. Malafronte, 3 Conn. App. 16, 22 (1984). See Rametta v. Stella, 214 Conn. 484, 489 (1990)(insurance agent who procured insurance for plaintiff for many years liable to plaintiff for negligently failing to procure requested coverage). It must be concluded, therefore, that when the defendants undertook to procure blanket replacement cost coverage for plaintiffs' properties, they assumed a legal duty to the plaintiffs to perform the undertaking with reasonable care.

Defendants contend that even if such a duty existed they exercised proper care at all times. It is undisputed, however, that Mr. Charles and Mr. Bass knew the Utica Mutual policy did not conform with the proposal and binder issued to the plaintiffs, and knew they needed to get Utica Mutual to fix the policy, yet failed to take such action before the fire. It is also undisputed that the plaintiffs were not notified of the nonconformity until after the fire. Given these facts, a jury would have to find that the duty of care owed to the plaintiffs was breached. See Preston v. Chartkoff, No. CV0020071112S, 2004 WL 304323, at *4 (Conn. Super. Ct. Jan 30, 2004) (broker has a

---

point does not create a genuine issue for trial because it is conclusory in nature and fails to address the undisputed facts concerning the long-term relationship between the plaintiffs and Mr. Charles, which compel the conclusion that he and S.C.S. acted as the plaintiffs' agent.

duty to act reasonably "to procure the insurance coverage he has promised to obtain and to notify his client promptly if he is unable to procure the requested insurance coverage").[4]

Finally, defendants argue that there is a factual dispute as to whether their breach proximately caused plaintiffs' injury. Proximate cause is an "actual cause that is a substantial factor in the resulting harm." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 383 (1982). "The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct." First Fed. Sav. & Loan Ass'n. of Rochester v. Charter Appraisal Co., 247 Conn. 597, 604 (1999). Though proximate cause is typically a question of fact to be decided by a jury, it becomes a question of law when "a fair and reasonable person could reach only one conclusion." Stevenson Lumber Co.-Suffield, Inc. v. Chase Assocs., Inc., 284 Conn. 205, 214 (2007) (internal quotation marks omitted).

Defendants contend that a jury could hold Utica Mutual solely responsible for plaintiffs' losses because it failed to issue a policy in conformity with the binder, failed to

---

[4] Negligence issues may be decided as a matter of law when "no court could hesitate or be in doubt concerning the question whether the conduct was or was not the conduct of a person of ordinary prudence under the circumstances," E. Elec. Constr. Co. v. Ebasco Servs., Inc., 166 Conn. 298, 302 (1974) (internal quotation omitted). This is such a case.

specifically alert the defendants of the nonconformity, and ultimately failed to pay in accordance with the coverage described in the binder. As discussed above, however, both Mr. Charles and Mr. Bass actually knew well before the fire that the Utica Mutual policy did not provide the necessary coverage. Mr. Charles instructed Mr. Bass to contact Utica Mutual and get the policy fixed, but Mr. Bass failed to do so and Mr. Charles failed to follow up. Mr. Charles understood that he had on obligation to provide the plaintiffs with notice of the nonconformity but he failed to notify them. As a result, the plaintiffs were deprived of an opportunity to secure other coverage and suffered losses they could have avoided. See Bell v. O'Leary, 744 F.2d 1370, 1373-74 (8th Cir. 1984) (finding proximate cause when defendant's negligence precluded plaintiffs from pursuing alternative insurance options). The defendants' own errors and omissions in violation of the Ursini standard of care must therefore be regarded as a substantial factor in causing the pecuniary harm for which plaintiffs seek compensation.

B.  Breach of Contract

Under Connecticut law, an action against an insurance broker for failure to procure insurance may be based on negligence or breach of contract, see Ursini, 118 Conn. at 559-60, or both, see Rametta, 214 Conn. at 485. A breach of contract claim differs from a negligence claim in that it is based on a failure to

11

perform a specific agreement. See <u>L.G. Defelice, Inc. v. Fireman's Ins. Co.</u>, 41 F. Supp. 2d 152, 163 (D. Conn. 1998). Here, plaintiffs' breach of contract claim differs from their negligence claim in that it is based on defendants' failure to procure a policy providing blanket replacement cost coverage for all of plaintiffs' properties. To prevail on the breach of contract claim, plaintiffs have the burden of proving that the defendants promised to procure such a policy. See <u>L & R Realty v. Connecticut Nat'l Bank</u>, 53 Conn. App. 524, 534-35 (1999); <u>Bridgeport Pipe Eng'g Co. v. DeMatteo Constr. Co.</u>, 159 Conn. 242, 246 (1970).

Defendants deny that they promised to procure a policy, as plaintiffs allege. They contend that they merely promised to apply for a policy and issue a binder, as they had in the past. The record does not conclusively establish that the defendants specifically agreed to procure a policy. Accordingly, plaintiffs are not entitled to summary judgment on the breach of contract claim.

IV. <u>Conclusion</u>

The motion for summary judgment [#175] is hereby granted in part and denied in part. Plaintiffs' motion for summary judgment on the negligence claim (count five) is granted with regard to liability only. The motion for summary judgment on the breach of contract claim (count one) is denied. The matter will be

referred to the Magistrate Judge for a hearing on damages.

So ordered.

Dated at Hartford, Connecticut this 3rd day of July 2008.


　　　　　　　　　　　　　　　_____/s/ RNC_____
　　　　　　　　　　　　　　　　　　Robert N. Chatigny
　　　　　　　　　　　　　　　　United States District Judge